## ADOPTION OF ELENA
### (and two companion cases[1]).

Plymouth. December 8, 2005. - January 31, 2006.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, & CORDY, JJ.

*Parent and Child,* Adoption, Dispensing with parent's consent to adoption, Interference with parental rights. *Adoption,* Parent's consent, Dispensing with parent's consent. *Minor,* Adoption.

At the hearing on a petition to dispense with the mother's consent to the adoption of three of her children, the judge gave due consideration to the question whether the mother's unfitness was temporary, where the judge made detailed findings about the mother's long-standing involvement with drugs and the effect this had on the children, as well as findings about the services that had been offered to the mother, and where the judge's conclusion that the mother's recent progress at rehabilitation was questionable (because of her lack of candor with her drug counselors and because she minimized the extent of her problem with drugs) was based on the evidence and on the judge's assessment of the credibility of the witnesses [30-34]; further, the judge did not base his decision to terminate the mother's rights on the bond between siblings and the theoretical possibility that sibling visitation would be forestalled [34].

PETITIONS filed in the Brockton Division of the Juvenile Court Department on September 26, 2001.

The cases were heard by *John P. Corbett,* J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Brian Pariser* for Department of Social Services.

*Garry M. O'Brien* for the children.

*Robert J. McCarthy, Jr.,* for the mother.

SPINA, J. In an unpublished opinion pursuant to its rule 1:28, the Appeals Court vacated the orders of a judge in the Juvenile Court terminating the mother's parental rights to three of her

---

[1]Adoption of Fred and Adoption of Alan. The three children's names are pseudonyms.

five children.[2] The Appeals Court affirmed so much of the orders as determined that the mother was unfit to assume parental responsibilities as of the time of trial, but it concluded that the trial judge failed to consider properly whether the mother's unfitness at the time of trial was temporary, based on recent progress she had made at a drug rehabilitation program. The court remanded the matter for further proceedings concerning the status of the mother's recovery efforts and her current relationship with her three youngest children. See *Adoption of Elena*, 63 Mass. App. Ct. 1103 (2005). We granted the application of the Department of Social Services (department), joined by the children, for further appellate review. We conclude that the judge did consider whether the mother's unfitness was temporary, and that his decision to terminate the mother's parental rights was based on an appropriate assessment of the evidence and was not an abuse of discretion. We therefore affirm the judgments.

1. We summarize the facts found by the judge. The mother was born in 1967 and graduated from high school in 1985. She met her first husband while attending college. They married and had their first child during the summer of 1986. The couple separated in 1987 due to the husband's abuse of heroin and his emotional abuse of the mother.

The mother began a relationship with another man in 1987. He became the father of her second child, born in 1990. The couple used drugs during their relationship, and eventually separated due to his physical and emotional abuse of the mother and her two children.

The mother became involved with a third man who, like the others, was physically abusive to her and her children. Elena was born to this couple, in 1997. The mother and Elena's father were heavy drug users during their relationship. Following their separation, the mother returned to the father of her second child. They had two more children — Fred, born in 1999, and

---

[2]The mother did not appeal the orders terminating her parental rights to her two oldest children. The father of the oldest child died in 1992. The father of the second child, who is also the father of Fred and Alan, signed adoption surrender forms as to all three. Elena's father never appeared at trial to object to the petition to dispense with his consent to adoption.

Alan, born in 2001 — and they married in 1999 after the birth of Fred. After Alan was born, they separated again due to the husband's physical and emotional abuse.

The children first became involved with the department in October, 1997, because of concerns of neglect, drug abuse by the mother, and physical abuse of the mother and her two oldest children by Elena's father. The case was closed within one week because the mother obtained a protective order and actively was pursuing services. In addition, although she admitted past use of drugs, she denied current use, and a random drug screen of the mother was negative. A second case was opened in November, 1998, involving concerns of neglect, as well as physical abuse of the children by the man who would become the mother's second husband. The case was closed in March, 2000, after the department determined that the needs of the children were being met by their mother and the man who by then had become her second husband, and the family had cooperated with the services provided.

The family again became involved with the department in February, 2001, initially over concerns of neglect and physical abuse of the children by the mother's second husband. After investigation, the allegation of neglect was supported. Subsequent allegations of neglect by the mother were supported after investigations in June and September, 2001. On September 7, 2001, the mother tested positive for cocaine despite her denial of substance abuse. She did not submit follow-up screens requested during the assessment period.

On September 25, 2001, the oldest child telephoned her paternal grandmother to report that the mother had been arrested and that the mother's boy friend of two weeks was in charge of the children. She reported that there was no food in the house and that the younger children were without diapers. The grandmother telephoned the department.

When social workers arrived, the boy friend was lying on the couch. The five children were present. The apartment was filled with trash, dirty clothing, empty food containers, and dirty dishes. The stench of garbage and urine permeated the apartment. Broken dishes and glass littered the floors. The exits were blocked by mounds of trash and debris. Seven month old

Alan was lying on a dirty mattress. His diaper disintegrated when a social worker picked him up. Fred's diaper, his only clothing, was "full." He was covered with dried food, and he had a rash. Elena was naked and no clean clothing could be found for her. The oldest child reported that she had tried to care for the other children but was overwhelmed. The children were removed from the home.

After the children were removed it was discovered that the mother essentially had "abdicated her role as parent to her [oldest child, who was then fifteen years of age], and to a lesser extent [her twelve year old son]. [The mother's] life centered on her own drug abuse and open sexual excess with a parade of abusive drug involved men." The eldest child has been diagnosed with anxiety and posttraumatic stress disorder. The two oldest children expressed a desire never to return to their mother's care.

The mother's partners physically and emotionally abused the children. The mother's response to the abuse of her children was ineffectual. There was occasional weak intervention and sometimes none at all. On one occasion, her response to the children's complaints was to tell them to stop exaggerating. On another occasion, she joined her partner in inflicting emotional abuse.

The mother frequently had sexual relations in the presence of her children. She would have sex with men in exchange for cocaine. Drug abuse has been a major factor in the mother's life over the years. It not only disabled her ability to parent but also exposed the children to drugs, drug paraphernalia, and other drug users. She facilitated drug deals, and often left her children in the care of drug users who came to the apartment while she went out to get drugs for them. Her oldest child's exposure to the drug trade was so extensive that she could describe drug paraphernalia in minute detail, as well as various methods used to ingest controlled substances.

After the children were removed from the home in September, 2001, the mother waived a custody hearing, and on October 1, 2001, the children were placed in the custody of the department. A service plan was devised with a goal of family reunification. One component of the plan required the mother to participate in

an inpatient drug rehabilitation program. She was given the names of four programs, but made no meaningful effort to avail herself of the services. She submitted to only three of more than fifteen drug screens requested from October 1, 2001, through April, 2002. She also failed to appear for any of the scheduled weekly visits with the children between September 25, 2001, and December 10, 2001. In January, 2002, as a result of the mother's failure to participate in services and her failure to maintain contact with the children, the department changed the goal of the service plan from reunification to adoption. A pretrial conference was held on February 6, 2002, at which time the case was scheduled for trial on June 11, 2002. The mother was present for the pretrial conference.

As a result of the change in the goal of the service plan, the mother was offered monthly, rather than weekly, visits. The mother's first visit with the children after the department was granted custody took place on February 11, 2002. During that visit she virtually ignored the two oldest children. A second visit occurred on March 21, 2002, and the mother appeared to be under the influence of some drug. She had used cocaine almost daily from late September, 2001, through late April, 2002. The mother did not visit with the children in April, 2002, because she failed to maintain contact with her social worker.

Although services continued to be offered to the mother during this time, she resisted. She would not accept domestic violence group counseling that had been offered. She would not enroll in an inpatient drug treatment program. Although she did enroll in an individual counseling program, she dropped out after one month.

On April 28, 2002, approximately six weeks before the scheduled trial date, the mother enrolled in a detoxification program. On May 3, 2002, she entered a four- to six-month inpatient drug treatment program.

The trial of this matter took place over five days from June 11, 2002, to June 14, 2002, and July 1, 2002. At the conclusion of the trial, the judge adjudicated all five children in need of care and protection and placed them in the permanent custody of the department. He ordered decrees to issue forthwith terminating the mother's parental rights to her two oldest

children. He took under advisement the question of termination of the mother's parental rights to Elena, Fred, and Alan. While the case was under advisement, the mother filed a motion to reopen the trial based on newly discovered evidence. The motion was allowed.[3]

The trial was reopened on October 8, 2002, and the mother presented evidence that she had participated successfully in the drug rehabilitation program, graduating from the residential component of the program in mid September, 2002. She appeared to respond well to therapy, participated in domestic violence programs, and submitted to required drug screens, which were all negative. The mother was involved in outpatient services, including individual substance abuse; domestic violence therapy; early recovery, relapse prevention group counseling; domestic violence group counseling; and five Alcoholics Anonymous meetings per week. Her drug screens were all negative. She was visiting with all five children on a monthly basis. The mother was living with her own mother and working at two jobs.

Notwithstanding the mother's apparent progress at the rehabilitation program, the judge found that she had not been forthright with program counselors about the extent of her past involvement with drugs: she had not disclosed that she had taken drugs in the presence of her children; that she had left her children in the care of drug users while she went to obtain drugs; and other details about her drug history. The judge found that she had continued to minimize her problems with drug rehabilitation counselors, just as she had minimized her conduct during the trial. The judge found that, although her efforts at rehabilitation were "commendable," "it is impossible to tell when, if ever, it would be possible to return the children to her care."

The judge further found that the mother lived for many years

---

[3]An allegation of abuse on the part of the preadoptive parents of Fred and Alan had been supported after investigation, and the department proceeded to seek approval of a change in its service plan for the boys. Because the preadoptive mother had testified against the mother at the trial and because her credibility at trial had been an issue, the judge allowed the mother to offer testimony about her current status and progress she had made in the rehabilitation program.

in a cycle of substance abuse and domestic violence that has left scars on all her children. He deemed her to be "in early recovery, and her efforts to support herself and participate in all of the services necessary to maintain her sobriety are much more than a full time job. Whether she can maintain successful recovery and care for three very young children is doubtful." The judge found that the mother's "unfitness is likely to continue into the indefinite future to a near certitude." He concluded that it is in the best interests of Elena, Fred, and Alan that the mother's parental rights be terminated and that the children be free for adoption.

2. The Appeals Court did not disagree with the trial judge's finding that the mother currently was unfit.[4] It concluded, however, that the judge did not give proper consideration to the question whether the mother's unfitness was temporary. See *Adoption of Carlos*, 413 Mass. 339, 350 (1992). The court cited the judge's finding that the mother was in the "early stages of recovery," the absence of any testimony "as to how long the children would require the care and protection of the Commonwealth," and the absence of "any inquiry . . . as to what support or assistance the department could have provided toward the goal of maintaining and reuniting the family" as the extent of the basis for concluding that the mother likely would not be able to provide for the care and protection of her children in the future. The Appeals Court also held that the judge improperly concluded that it was in the best interests of Elena, Fred, and Alan to terminate their relationship with the mother, based on a finding that they could not be reunited with the mother and also maintain a relationship with the two older siblings, with whom they were more strongly bonded.

When reviewing a decision to terminate parental rights, we must determine whether the trial judge abused his discretion or committed a clear error of law. See *Adoption of Hugo*, 428 Mass. 219, 225 (1998), cert. denied sub nom. *Hugo P.* v. *George P.*, 526 U.S. 1034 (1999). Subsidiary findings must be

[4]Based on our review of the record, there is no merit to the mother's claim that the finding of current unfitness clearly is erroneous. Contrary to the mother's suggestion, her sobriety and efforts at rehabilitation at the time of trial do not require a finding of current fitness.

established by a fair preponderance of the evidence, *Care & Protection of Laura*, 414 Mass. 788, 793 (1993), and will not be disturbed unless clearly erroneous. *Custody of Eleanor*, 414 Mass. 795, 799 (1993). "[I]n this field it is neither possible nor desirable to make decisions with precision, and [] 'much must be left to the trial judge's experience and judgment,' " *Adoption of Hugo, supra,* quoting *Petition of the New England Home for Little Wanderers to Dispense with Consent to Adoption*, 367 Mass. 631, 646 (1975); therefore, the judge's assessment of the credibility of the witnesses and the weight of the evidence is entitled to deference. *Custody of Two Minors*, 396 Mass. 610, 618 (1986). Where, as here, the judge determines that the mother currently is unfit to parent her children, and where termination of parental rights is sought, the judge then "must determine whether the parent's unfitness is such that it would be in the child's best interests to end all legal relations between parent and child." *Adoption of Nancy*, 443 Mass. 512, 515 (2005).

"In determining whether the best interests of the child will be served by issuing a decree dispensing with the need for consent . . . the court shall consider the ability, capacity, and *readiness* of the child's parents . . . to assume parental responsibility" (emphasis added). G. L. c. 210, § 3 (*c*). See *Adoption of Nancy, supra.* Where there is "credible evidence [] [that] there is a reasonable likelihood that the parent's unfitness at the time of trial may be only temporary[,] [a] judge may properly be guided by evidence demonstrating reason to believe that a parent will correct a condition or weakness that currently disables the parent from serving his or her child's best interests." *Adoption of Carlos, supra* at 350. "[A] condition which is reasonably likely to continue for a prolonged indeterminate period, such as alcohol or drug addiction . . . [that] makes the parent . . . unlikely to provide minimally acceptable care of the child" is not a temporary condition. G. L. c. 210, § 3 (*c*) (xii). See *Adoption of Vito*, 431 Mass. 550, 555-556 (2000).

Contrary to the mother's argument and the conclusion of the Appeals Court, the judge gave due consideration to the question whether the mother's unfitness was temporary. There was ample evidence that the children would suffer if returned to the custody

of their mother. The judge traced the mother's long history of involvement with drugs and abusive men, and the effect this had on the children. Although the brunt of the abuse was directed at the mother and the oldest children, Elena, Fred, and Alan were no less victims from having witnessed the abuse as opposed to being an intended recipient. See *Custody of Vaughn*, 422 Mass. 590, 599 (1996). The mother was unable to stand up to her abusers when the abuse was directed at her, and she was ineffectual at intervening on behalf of her children when the abuse was directed at them.

The judge made detailed findings about the mother's long-standing involvement with drugs and the effect this had on the children. She took drugs in the presence of her children, left them in the care of addicts, and engaged in sex for drugs in the presence of her children. By September, 2001, the children had been utterly neglected and were living in squalor. After her children were taken from her, the mother took no steps to visit them for over four months. For over six months she did nothing that was asked of her in terms of counseling and rehabilitation, even when, at first, it meant reunification, and later, risk of loss of all parental rights.[5]

The judge also made detailed findings about the services that had been offered to the mother. She had been given the names of four inpatient drug rehabilitation programs to contact, and had been offered domestic violence group counseling. She refused treatment, even after her refusal resulted in a change in the service plan from reunification to adoption. The judge also could consider that, in 1997 and 1998, the mother had availed herself of services that had been offered, but that she had failed

---

[5] The mother argues that she was not given sufficient time to avail herself of the services needed to correct the weaknesses in her parenting skills. The cases on which she relies generally involve a change in goal of a service plan from reunification to adoption after a parent has shown little or no improvement following participation in available services or has failed to perform all tasks required under the plan. See, e.g., *Adoption of Daniel*, 58 Mass. App. Ct. 195, 197 (2003); *Adoption of Terrence*, 57 Mass. App. Ct. 832, 835 (2003); *Care & Protection of Olga*, 57 Mass. App. Ct. 821, 826 (2003). But see *Adoption of Nancy*, 443 Mass. 512, 513 (2005). Here, the mother ignored all aspects of the plan, including visits with her children. There is no specified period of time the department must afford a parent to comply with a service plan before changing the goal to adoption.

to utilize effectively those services to address issues of drug abuse and domestic violence that had taken control of her life and rendered her incapable of giving her children the care and protection they needed. The judge's conclusion that the mother's recent progress at rehabilitation was questionable (because of her lack of candor with her drug counselors and because she minimized the extent of her problem with drugs) was based on the evidence and his assessment of the credibility of the witnesses. His findings are entitled to deference and are not clearly erroneous.

The judge implicitly based his findings of the mother's current and future lack of parental fitness on the strength of her lengthy past involvement with drugs and abusive men, the disabling effect they had on her ability to parent, and her inability to deal effectively with these issues in the past. He also considered her lack of candor and her tendency to minimize her misconduct when working at rehabilitation as an indication that her efforts at rehabilitation would not likely be successful. A judge properly may consider a pattern of parental neglect or misconduct in determining future fitness and the likelihood of harm to the child, see *Custody of Two Minors, supra* at 621, as well as current parental unfitness, see *Care & Protection of Stephen*, 401 Mass. 144, 152 (1987).

The judge specifically identified the factors set forth in G. L. c. 210, § 3 (*c*) (ii), (iii), (iv), (v), (vi), (vii), (ix), (x), and (xii), as applicable to this case. Significantly, § 3 (*c*) (xii) speaks of "a condition which is reasonably likely to continue for a *prolonged, indeterminate period*, such as . . . drug addiction . . . and the condition makes the parent . . . unlikely to provide minimally acceptable care of the child" (emphasis added). The judge was referring to the mother's "significant strides toward permanent sobriety" in his observation that "it is impossible to tell when, if ever, it would be possible to return the children to her care." The judge's finding that it was "doubtful" that she could "maintain successful recovery and care for three very young children" and his conclusion that the mother's "unfitness is likely to continue into the indefinite future to a near certitude"

are based on appropriate consideration of the evidence and are not clearly erroneous.[6]

Finally, the mother and the Appeals Court suggest that the judge "substantially[, and thus erroneously,] base[d] his decision to terminate [the mother's] parental rights on the bond between siblings and the theoretical possibility that sibling visitation would be forestalled without engaging in a thorough analysis of the relevant criteria." See *Adoption of Daniel*, 58 Mass. App. Ct. 195, 202-203 (2003); *Adoption of Katharine*, 42 Mass. App. Ct. 25, 30-31 (1997). Although the judge found that the three youngest children had bonded more strongly to their older siblings than to their mother, and that they could not be returned to her and also maintain a relationship with the two oldest children, consideration may be given to sibling bonds without making the requisite detailed findings about the nature of the bonds formed, the serious psychological harm that would flow from severing those bonds, the means that had been considered to alleviate the harm, and why those means were determined to be inadequate, provided such sibling bonding has not been given determinative weight. See *Care & Protection of Three Minors*, 392 Mass. 704, 715 (1984); *Petition of the Dep't of Social Servs. to Dispense with Consent to Adoption*, 392 Mass. 696, 700 (1984). It was appropriate for the judge to describe the nature of the relationship between siblings, and it is clear from the lack of prominence of this finding that it was not determinative. There was no error.

The decrees dispensing with the need for the mother's consent to adoption as to Elena, Fred, and Alan are affirmed.

*So ordered.*

---

[6]The mother testified on June 13, 2002, that it would be at least one year before she could begin caring for the children again. A judge may say "enough" when faced with an indeterminate period of time required for parental recovery, if recovery is a viable possibility. *Adoption of Nancy, supra* at 517.