After a trial, a judge of the Juvenile Court found the mother unfit to parent the child, terminated the mother's parental rights, and approved the adoption plan of the Department of Children and Families (department).[3] The mother appeals, arguing that the judge abused his discretion by (1) terminating her parental rights where her unfitness was temporary and (2) declining to order posttermination and postadoption visitation. We affirm.
Background. We summarize the relevant facts and procedural history from the judge's findings, reserving some details for discussion of the issues.
The mother and father were married in October, 2013. The mother repeatedly reported abuse by the father, who was incarcerated for domestic violence against the mother on at least one occasion. The mother also has repeatedly denied abuse by the father. The mother also suffered domestic abuse while living with the father of her first child.[4] The department became involved at the time of the child's birth in October, 2014, following a report pursuant to G.L.c. 119, § 51A, alleging neglect based on concerns of domestic violence between the mother and the father, the mother's emotional instability, and the knowledge that both parents had lost custody of their other children. Within days of the child's birth, the department was awarded temporary custody. The child has been in the same foster placement for the duration of the care and protection petition, and was fifteen months old at the time of trial.
The mother has experienced significant trauma in her life.[5] She has been consistent about attending counseling, but inconsistent with other services. Initially, the mother consistently attended visits with the child, but became less consistent as time progressed. Visits were subsequently decreased in frequency from weekly to bimonthly, then monthly. During the later visits, the mother did not engage with the child, and the child had no reaction to seeing the mother.
Discussion. 1. Termination of parental rights. In determining whether the best interests of the child are served by a termination of parental rights, "the court shall consider the ability, capacity, and readiness of the child's parents ... to assume parental responsibility." Adoption of Elena, 446 Mass. 24, 31 (2006), quoting from G.L.c. 210, § 3(c ). In doing so, "[w]e give substantial deference to a judge's decision ... and reverse only where the findings of fact are clearly erroneous or where there is a clear error of law or abuse of discretion." Adoption of Ilona, 459 Mass. 53, 59 (2011). An abuse of discretion occurs where "the judge made a clear error of judgment in weighing the factors relevant to the decision ... such that the decision falls outside the range of reasonable alternatives." L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014) (quotation omitted).
The mother does not dispute that she was unfit to care for the child at the time of trial.[6] Rather, she contends that her unfitness was only temporary and that the department failed to make reasonable efforts to assist the mother in improving her parenting skills and assisting her in acquiring suitable housing.
"Before seeking to terminate parental rights, the department must make reasonable efforts aimed at restoring the child to the care of the natural parents. This duty includes a requirement that the department provide services that accommodate the special needs of a parent. However, even where the department has failed to meet this obligation, a trial judge must still rule in the child's best interest." Adoption of Uday, 91 Mass. App. Ct. 51, 53 (2017), quoting from Ilona, supra at 60-61. In addition, "a parent must raise a claim of inadequate services in a timely manner so that reasonable accommodations may be made." Adoption of Gregory, 434 Mass. 117, 124 (2001).
The mother is to be lauded for the positive steps she has taken to improve her situation. Nonetheless, the judge properly considered the required factors set forth in G.L.c. 210, § 3(c ), and found factors ii, iii, v, vi, and viii applicable to his determination that the mother is unfit.
The judge emphasized in his findings the mother's failure to address her shortcomings, as demonstrated by her failure to address the mental health issues that limit her ability to care for the child, her inability to comprehend and remedy the negative effects of the domestic violence she has experienced, and her lengthy history of inability to maintain stable housing. In addition, the mother failed to comply with service plans provided by the department, which included tasks tailored to her such as attending domestic violence and parenting programs, obtaining a restraining order against the father, and consistently attending visits with the child. To the extent that the mother was engaged in therapy, the judge found that she failed to benefit from the services and address the domestic violence issues in her life, to the detriment of her ability to care for the child. The judge found that "[t]he [d]epartment attempted to work with [the mother] for almost one year prior to changing the goal from reunification to termination of parental rights." He further found that the mother continued to face the same issues, not due to failures of the department to address her needs, but because of her lack of engagement and follow-through. Based on the record, we cannot conclude that these findings are clearly erroneous. See Adoption of Ilona, supra.
We discern no abuse of discretion in the judge's conclusion that termination of the mother's parental rights was in the child's best interests.
2. Posttermination and postadoption visitation. The mother argues that the judge abused his discretion in not ordering posttermination and postadoption visitation. We disagree.
Once it is established that a parent is unfit, any visitation plan is left to the discretion of the trial judge. Id. at 65-66. The judge should base this decision on the child's best interests. Adoption of Vito, 431 Mass. 550, 553 (2000). An order of visitation "may be warranted where the evidence readily points to significant, existing bonds between the child and a biological parent, such that a court order abruptly disrupting that relationship would run counter to the child's best interests." Id. at 563.
Here, the judge was well within his discretion in not ordering visitation, where he credited the testimony of a department social worker that the mother did not engage with the child during later visits and the child did not react to the mother's presence.
Decree affirmed.

The judge also terminated the father's rights, but he is not a party to this appeal.

The first child is not involved in these proceedings. Hereafter, our use of "child" refers to Theresa, the child who is the subject of these proceedings.

The mother herself was placed in the custody of the department when she was three months old, after which she was placed in numerous foster homes, group homes, and psychiatric hospitals. She reported sexual and physical abuse during those placements. She has been diagnosed with numerous mental health conditions.

We pause to note that the mother has shown evident affection toward the child, and none of the judge's findings negate this. Despite the moral overtones of the statutory term "unfit," the judge's decision was not a moral judgment or a determination that the mother does not love the child. The inquiry instead is whether the parent's deficiencies or limitations "place the child at serious risk of peril from abuse, neglect, or other activity harmful to the child." Care & Protection of Bruce, 44 Mass. App. Ct. 758, 761 (1998).