The mother appeals from a decree of the Juvenile Court, pursuant to G. L. c. 210, § 3, finding her unfit and dispensing with the need for her consent to the adoption of her son Quest. She contends that the judge erred by (1) finding her to be an unfit parent without clear and convincing evidence, (2) considering irrelevant factors in assessing whether termination of her parental rights was in Quest's best interests, and (3) terminating her parental rights without evidence of an adoption plan. Quest appeals the judge's order limiting posttermination and postadoption visitation with his mother. We affirm.
Background. The Department of Children and Families (department) filed a care and protection petition, pursuant to G. L. c. 119, § 24, on behalf of seven year old Quest on January 13, 2014, and obtained custody of him. At the scheduled trial on August 19, 2015, the department presented the testimony of its ongoing social worker, as well as its adoption social worker, and submitted its adoption plan in evidence. Although counsel for the mother was present at the proceeding, the mother did not appear. Neither the father nor his counsel appeared. At the conclusion of the trial, the judge found both parents to be unfit, Quest to be in need of care and protection, and termination of parental rights to be in Quest's best interests; the judge entered decrees terminating their parental rights.[3] The judge continued the case for further hearing on postadoption contact and continued the mother's monthly visitation schedule posttermination. On October 7, 2015, the mother moved to vacate the decree terminating her parental rights, explaining that she had been prevented from appearing at trial "by an abusive domestic partner." After an evidentiary hearing, the judge allowed the motion.
At the retrial as to the mother on February 3, 2016, the mother testified and the department submitted a court investigation report dated March 14, 2014, and the mother's criminal activity record information. Quest's educational guardian ad litem also submitted an updated report. The parties agreed that the judge could consider the testimony of the two social workers from the original trial as it related to the issue of posttermination visitation. At the conclusion of the hearing, the judge terminated the mother's parental rights. In her written findings dated June 7, 2016, the judge determined that the department's plan of adoption by recruitment was in Quest's best interests and retained jurisdiction with respect to posttermination and postadoption contact between Quest and his mother. On December 6, 2016, the judge issued an order allowing the mother to continue her monthly visits with Quest posttermination and to have at least four visits per year once Quest is placed in an adoptive home, until court approval of an open adoption agreement.
Mother's unfitness. The mother's primary argument on appeal is that the department failed to present sufficient evidence to establish her current unfitness to parent Quest, because it relied on a stale court investigation and failed to establish how any of the mother's personal issues put Quest at risk of abuse or neglect. A judge's finding of parental unfitness must be based on clear and convincing evidence. See Adoption of Peggy, 436 Mass. 690, 701 (2002). It will not be disturbed absent an abuse of discretion or clear error of law. See Adoption of Ilona, 459 Mass. 53, 59 (2011).
Although the court investigation was nearly two years old by the time of trial, the mother's testimony at trial furnished updated evidence of the conditions in effect at the time of trial, and demonstrated no material improvement in the conditions described in the court investigation report. As to the connection between the mother's issues and her fitness to parent Quest, the judge's unchallenged findings give ample support for her determination. See Adoption of Greta, 431 Mass. 577, 587 (2000) (findings must be accepted as true, absent showing that they are clearly erroneous).
Although the mother had several issues (including lack of stable housing, involvement in domestic violence relationships, mental health problems, criminal court cases, and lack of employment), they all stemmed in one way or another from her opiate addiction, which began before Quest's first birthday and continued to the time of trial. She had not cared for Quest's daily needs since he was fourteen months old, at which time his father obtained custody of him. She agreed to custody with the father because she was unable to offer Quest an appropriate place to live.
Six years later, when Quest was removed from his father's home due to physical abuse and exposure to domestic violence, and repeated incidences of Quest wandering the streets of Lowell alone, the mother was still unable to take him into an appropriate home setting. She sometimes stayed with friends, sometimes lived with her mother (who had her own issues with addiction), and sometimes entered treatment facilities. During the two years that Quest remained in the custody of the department, the mother pursued various drug treatment options without lasting success; she would have short periods of sobriety and repeated relapses.
At the time of trial, the mother had only four months of sobriety, following a daily habit of injecting one gram of heroin per day. She acknowledged that she was in no position to care for Quest as of the day of trial due to her need to address her ongoing drug addiction. The judge's findings were based on current information concerning the mother's fitness and made the direct connection between the mother's personal issues, in particular her drug addiction, and her inability to further Quest's best interests. See Adoption of Elena, 446 Mass. 24, 31-33 (2006). The judge's finding of parental unfitness was supported by clear and convincing evidence. See Care & Protection of Yetta, 84 Mass. App. Ct. 691, 695-696 (2014) (defining clear and convincing evidence in context of parental fitness).
Assessment of statutory factors. The mother contends that the judge erred in determining that termination of her parental rights was in Quest's best interests, because she considered factors that were irrelevant. We review the judge's best interests determination for an abuse of discretion or clear error of law. See Adoption of Ilona, 459 Mass. at 59. Section 3(c ) of G. L. c. 210 sets out nonexclusive factors that must be considered in making this determination, along with any other relevant factors. Id. at 62 n.13.
Here, the judge considered each of the enumerated factors and listed six of them as applicable. Factors ii, iv, and vi deal with the mother's failure to engage in services that were "offered or received" to correct issues impeding her parenting abilities. The mother contends these factors are inapplicable because the department never "offered" the mother any services. The factors are relevant, however, because the mother nevertheless "received" services, yet she was still unable to manage her drug addiction.
Factor xii likewise deals with the fact that the mother's drug addiction was likely to continue for a prolonged, indeterminate period. Despite her sobriety at the time of trial, the judge was entitled to conclude that the mother's problems with addiction were likely to continue, based on the mother's history of relapse, together with the relatively brief period of sobriety in comparison to the long period of her addiction. See Adoption of Elena, 446 Mass. at 31. These factors were appropriately considered by the judge.[4] We discern no abuse of discretion or clear error of law.
Absence of adoption plan. The mother contends that the department did not present any plan of adoption at the February 3, 2016, retrial and that, therefore, the judge could not terminate her parental rights. In order to terminate parental rights, the judge must make a finding that it is in the child's best interests; in making this determination, the judge must consider "the plan proposed by the department ...." G. L. c. 210, § 3(c ), as amended by St. 1999, c. 3, § 17. Here, the judge did consider the department's plan for Quest, which was adoption by recruitment. The plan, however, was submitted at the original trial rather than at the mother's retrial.[5] When the judge indicated at the conclusion of the trial that she was terminating the mother's parental rights, the mother made no objection concerning the absence of a plan. Her claim of error is therefore waived. See Adoption of Willow, 433 Mass. 636, 651 (2001) (sibling separation argument on appeal waived where not argued to trial judge).
In any event, the mother was not prejudiced by the judge's consideration of a plan that was not formally introduced in evidence. She was represented by counsel at the original trial, during which the written plan was submitted. The same lawyer represented her at the retrial, where the mother testified that she had recently spoken with Quest's adoption social worker and understood that the department's goal for Quest was adoption. Moreover, the parties agreed that the judge could consider the testimony of the ongoing social worker and the adoption social worker from the original trial. That testimony included discussion of the department's plan of adoption by recruitment and of a child-specific placement. Furthermore, the mother offered no competing permanency plan for Quest. In the circumstances, we find any error in the consideration of a plan not submitted at the retrial to be harmless, as there was no prejudice to the mother. See Care & Protection of Frank, 409 Mass. 492, 499 (1991) (judge's reliance on evidence not introduced deemed harmless error without showing of prejudice).
Posttermination and postadoption contact. Quest claims that the judge abused her discretion in not ordering more frequent visits with his mother posttermination and postadoption. He argues that he had frequent visitation with his mother when he lived with his father up until the filing of the care and protection petition. Additionally, he argues the petition was filed while he was in the care of his father and had nothing to do with any failing of his mother. With undisputed evidence that his mother's continued involvement was in his best interests, he argues, the judge should have allowed more visitation.
Once parental unfitness is established, any visitation order is left to the sound discretion of the trial judge. See Adoption of Ilona, 459 Mass. at 65-66. The decision must be based on the child's best interests. Id. at 63. During the pendency of the proceedings, the mother had been visiting Quest on a monthly basis. The judge continued this schedule posttermination. In addition, she ordered visitation a minimum of four times per year once Quest was placed in an adoptive home. The judge's findings reflect that she took into consideration the mother's need to focus on her sobriety, along with Quest's need for stability in determining that continuation of the current visitation schedule was in his best interests, with a tapering of visits coinciding with his placement in an adoptive home. This does not constitute an abuse of discretion.
Decree affirmed.

The father did not appeal from the decree terminating his parental rights and is not a party to the present appeal.

While the remaining factors (iii and vii) may not have applied, there is no indication that the judge actually considered them, and they "are not central to the ultimate conclusion of unfitness." Care & Protection of Olga, 57 Mass. App. Ct. 821, 825 (2003). The factors that the judge did consider, as evidenced in her findings, fully support her determination that termination of the mother's parental rights was in Quest's best interests.

In her findings, the judge indicated that she was taking judicial notice from the original trial that the department's plan was adoption by recruitment. Although the judge could have taken judicial notice of the docket entry indicating that the permanency plan for Quest was adoption, the adoption plan entered in evidence in the original trial was not a matter of which judicial notice could be taken. See Home Depot v. Kardas, 81 Mass. App. Ct. 27, 28 (2011).