Following trial, a judge of the Juvenile Court found by clear and convincing evidence that both the mother and maternal grandmother (grandmother) are currently unfit to parent the subject children, Questa and Judy.[3] The judge terminated the mother's parental rights;[4] committed the children to the custody of the Department of Children and Families (DCF); and approved DCF's plan for the adoption of the children by their current foster parents.[5] On appeal, the mother contends that the judge abused his discretion in terminating her parental rights because he (1) failed to give sufficient weight to her recent progress, among other factors; and (2) reached scientific conclusions regarding her substance abuse without the aid of expert testimony. The grandmother contends that the judge's finding that she is unfit is not supported by clear and convincing evidence. We affirm.
Background. The facts of this case are detailed in the judge's 882 findings of fact within his 137-page decision.[6] In brief, the mother has a lengthy substance abuse history coupled with a significant criminal history. At the time of trial, she was twenty-eight years old and had been using drugs for eleven years. She has abused alcohol, cocaine, and opiates, and "is a self-described drug addict."[7] She has participated in multiple substance abuse treatment programs, and has endured several relapses with no success at maintaining long-term sobriety.[8] The mother's considerable history with the criminal justice system is detailed in the record. She was incarcerated at MCI Framingham at the time of trial and was placed on "restriction" for more than one-half of the time she served there.[9] She was unable to have visits with the children when on restriction. Before she was incarcerated, she missed numerous visits with the children, and during some of the visits that she did attend, she was observed with "droopy" eyes, slurred speech, and difficulty sitting up.
Questa was born in 2010 with withdrawal symptoms related to neonatal exposure to Subutex. Judy was born in 2013 with "Neonatal Abstinence Syndrome" and was also treated for withdrawal symptoms.
The mother's conduct, which resulted in numerous DCF investigations, is detailed throughout the judge's findings. The record and the judge's findings contain detailed evidence of the mother's problematic behavioral history marked by domestic violence, anger management issues, problems vis-à-vis DCF employees, arrests, issues with law enforcement, and a variety of criminal conduct.
The grandmother has a long history of treatment for mental health issues. As with the mother, the judge's findings detail the grandmother's myriad behavioral issues, which need not be delineated here again. We do note, however, that the grandmother was disruptive in her contacts with DCF, failed to comply with service plan requirements, and neglected to complete a psychological or neuropsychological evaluation. Questa witnessed domestic violence in the grandmother's home. In addition, the grandmother was disruptive throughout the nineteen days of trial in this case, illustrated by repeated admonitions from the judge and exits from the court room.[10]
Discussion. The mother. The mother concedes that she was unfit at the time of trial and does not challenge the current finding of unfitness. Rather, she contends that the extreme step of termination of parental rights was unnecessary in view of her recent progress, bond with the children, and supportive relationship with the preadoptive family. The argument is unavailing.
We review the mother's claims to determine whether the trial judge abused his discretion or committed a clear error of law. Adoption of Imelda, 72 Mass. App. Ct. 354, 360 (2008). Here, the judge's findings are specific, detailed, and demonstrate that close attention was given to the evidence. See Adoption of Anton, 72 Mass. App. Ct. 667, 673 (2008). Review of the judge's well-supported factual findings does not reveal any error of consequence, and the mother does not contend otherwise.
"A decision to terminate parental rights involves a two-step analysis. First, a determination that the parent is currently unfit, and, second, a determination that termination is in the best interests of the child." Imelda, supra at 360 (citations omitted). The trial judge must consider whether the parents' deficits "place the child at serious risk of peril from abuse, neglect, or other activity harmful to the child." Care & Protection of Bruce, 44 Mass. App. Ct. 758, 761 (1998). "Once a parent is found to be unfit, the judge must then ascertain whether the parent's unfitness is such that it would be in the child's best interests to end all legal relations between parent and child." Imelda, supra (quotation omitted).
Here, the record supports the finding of parental unfitness by clear and convincing evidence. The judge fully and properly considered the required factors set forth in G. L. c. 210, § 3(c ), and found factors (ii), (iv), (vi), (vii), and (xii) applicable to his determination that the mother is unfit. As of the date of the judge's findings, "[b]y reason of her substance abuse and criminal activity, [the mother] has been unavailable to provide care to [Questa] since in or about April 2012 and has cared for [Judy] for only five of her fifty months of life." She has also demonstrated an inability to make use of substance abuse treatments, failing to achieve "any significant period of sobriety while outside a prison facility." Her behavioral issues, prior to and during periods of incarceration, as well as her inability to control her impulsivity, further support the judge's finding of unfitness. Her history of chaotic and violent interpersonal relationships, and her children's exposure to them, has presented further problems. The record supports the judge's finding that the mother "does not demonstrate any insight into how her abusive and occasionally assaultive or threatening behavior and language may harm the [children]." In view of this lack of understanding and her history, "this behavior is likely to be repeated to the detriment of [the children]." Ultimately, we discern no abuse of discretion in the judge's determination that the mother's unfitness is not temporary. See Adoption of Elena, 446 Mass. 24, 31-34 (2006) ; Adoption of Ilona, 459 Mass. 53, 59-60 (2011).[11]
The grandmother. The grandmother contends that it was erroneous for the judge to find her unfit because DCF failed to make reasonable efforts to reunify her with Questa, and there was no clear and convincing nexus between her mental health issues and inability to provide care for Questa. We are unpersuaded.
First, we agree with DCF's contention that the grandmother failed to raise her "inadequate services" claim in a timely manner. See Adoption of Gregory, 434 Mass. 117, 124 (2001) ; Adoption of Daisy, 77 Mass. App. Ct. 768, 781 (2010), S.C., 460 Mass. 72 (2011). On this basis alone, her claim is unavailing.
Second, even assuming that the claim was raised in a timely manner, and further assuming that DCF failed to make reasonable efforts to restore Questa to the care of the grandmother, the judge was nonetheless required to consider and rule in Questa's best interests. See Ilona, supra at 61; Adoption of Uday, 91 Mass. App. Ct. 51, 53 (2017).
Here, the judge did not abuse his discretion in determining that the grandmother was unfit and that it was in Questa's best interests to be committed to DCF's custody.[12] The judge found that although the grandmother does not have parental rights to be terminated, the factors set out in G. L. c. 210, § 3(c ), are nonetheless relevant to the fitness determination, and considered factors (ii), (iv), (vi), and (xii) to be applicable to his analysis. The judge found, inter alia, that the grandmother had exposed Questa to domestic violence and to persons under the influence of controlled substances; that the grandmother's anxiety disorder is poorly controlled by therapy or otherwise; and that she had a "very tenuous relationship with truth-telling," as evidenced by her willingness to "change her version of events to meet the occasion." The judge also found that the grandmother is unwilling and unable to control her conduct, exemplified by various outbursts in the presence of Questa, and by her removal from the court room for outbursts on numerous occasions during the nineteen days of trial. See Adoption of Mary, 414 Mass. 705, 711 (1993) ("Parental unfitness must be determined by taking into consideration a parent's character, temperament, conduct, and capacity to provide for the child"). Her medical prescriptions, which presented a sedating effect, further created a risk to Questa's safety, as detailed by the judge. DCF clearly and convincingly proved that the grandmother is unfit. The judge's findings in this regard are comprehensive and supported by the record, and thus we find no abuse of discretion stemming therefrom.
Decrees terminating mother's parental rights affirmed.
Judgment finding grandmother unfit affirmed.

The grandmother was Questa's legal guardian at the time the Department of Children and Families filed its care and protection petition on behalf of Questa.

The judge also terminated the parental rights of Questa's father and Judy's "unknown unnamed father." Neither father is involved in this appeal.

The foster parents are Questa's godparents. The foster parents have a generally warm and supportive relationship with the mother and grandmother, and the judge set out a detailed schedule of posttermination and postadoption visitation between the children and the mother and grandmother.

The judge's comprehensive findings of fact find ample support in the record.

The judge found, and the record reflects, that opiates-including heroin-are her "drug of choice."

The mother has received substance abuse treatment from approximately fifteen inpatient programs, five outpatient programs, and three methadone-maintenance programs. At the time of trial, her longest period of sobriety in the community was six months.

AT MCI Framingham, the mother was placed on restriction for, inter alia, failing to provide a urine screen, fighting with inmates, and other violations of prison rules.

We pause to note that the mother and the grandmother have shown affection for the children, and none of the judge's findings negate this. Despite the moral overtones of the statutory term "unfit," the judge's decision was not a moral judgment or a determination that the mother and the grandmother do not love the children. Instead, the relevant inquiry, as the judge recognized and as discussed, infra, was whether the parent's or guardian's deficiencies or limitations "place the child[ren] at serious risk of peril from abuse, neglect, or other activity harmful to the child[ren]." Care & Protection of Bruce, 44 Mass. App. Ct. 758, 761 (1998).

We disagree with the mother's contention that expert testimony or scientific evidence was necessary to prove that her substance abuse was predictive of future events. The mother cites no authority for this contention, and we are unaware of any such requirement. The evidence of the mother's pattern of drug abuse and inability to maintain sobriety or make effective use of treatment (combined with myriad other factors), overwhelmingly supported the judge's determination that her unfitness is likely to continue unabated into the future. We are obligated to give substantial deference to that determination. See Ilona, 459 Mass. at 59.

For purposes of our analysis, we will assume, without deciding, that the clear and convincing evidence standard of proof applies to a guardian.