NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-949

ADOPTION OF AUGUSTIN.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The mother of Augustin appeals from a decree entered in the Juvenile Court terminating her parental rights.  She contends that the judge's decision was based on stale evidence, an inadmissible affidavit, and an error of fact, and that the judge abused her discretion by declining to order postadoption visitation.  We affirm.

Background.  Augustin was born in September 2007, the second of the mother's three children.[2]  The identity of Augustin's father was never established.  The mother's third child, Sarah (a pseudonym), with a different father, was born in December 2011.  The Department of Children and Families (department) received a number of reports submitted pursuant to

---

[1] A pseudonym.
[2] The mother's parental rights as to her oldest child were terminated in 2002.

G. L. c. 119, § 51A, alleging abuse and neglect of Augustin and Sarah in 2015 and 2016.

The department commenced these proceedings on April 19, 2016, after receiving a report that Augustin witnessed his mother being stabbed by a boyfriend. According to the affidavit attached to the petition, an investigator and social worker from the department went to Augustin's school to interview him about the incident. Augustin said that he was present when his mother and the boyfriend, Adam (a pseudonym), got into a fight; although his mother lied to him about being stabbed, he remembered seeing a knife, and going outside to look for help because his mother screamed to call for the police. His mother told him that "if [Adam] gets his 'boys' they will try to shoot her, and if they do, Augustin needs to run for his life." During the interview Augustin also disclosed that his maternal grandmother had sexually abused him in the past. Augustin and Sarah were removed from the mother's custody and placed in the custody of the department.

The department provided the mother with an action plan that recommended that she refrain from substance use, engage in mental health treatment and domestic violence services, and meet with the department monthly. The mother made no appreciable progress during the next two years. She was resistant to mental health and substance use treatment, refused urine screens, and

2

failed to address the presence of domestic violence in her life, and she was uncooperative, disruptive, and deceptive in her dealings with the department. She was manipulative in her interactions with Augustin as well. In October 2016, Augustin ran away from his foster home, and the department could not locate him; the mother did not answer the department's numerous phone calls or answer the door when police officers visited her home looking for Augustin. Augustin appeared at school the next day and explained that he had used public transportation to go to his mother's home and that they were home when the police rang the doorbell. The mother denied seeing Augustin, claiming she had been in the hospital and unable to receive the department's messages.[3]

In September 2017, during a family therapy session, Augustin told his mother that he was going to a preadoptive home; she yelled at him and told him that he needed to write a letter to his lawyer and whispered in his ear what to write. Augustin did not want to write the letter and felt that he needed to tell lies to make his mother happy. Family therapy was terminated shortly thereafter due to the mother's inconsistency in attending the meetings and inappropriate

---

[3] The judge did not specifically discredit the mother's denial, but it is apparent that the department and the judge did not find the mother's denial to be credible.

behavior.  Augustin was placed in a preadoptive home in November 2017, where he has remained ever since.  On May 11, 2018, the mother stipulated to her unfitness and the department was granted custody of Augustin "until becoming an adult or until, in the opinion of the department, the object of the commitment has been accomplished, whichever occurs first."[4]

After the mother stipulated to unfitness, there were recurring incidents in which she engaged in or was the victim of violence.  In January 2019 the police were called to the mother's address based on a report that she had assaulted her brother's girlfriend.  In July 2019 the police responded to her home when the mother reported that Adam had slapped her in the face; he was charged with assault and battery on a household or family member.  In September 2019, the mother was arrested for assaulting Sarah's father.

Mental health issues also plagued the mother.  In March 2020, the police responded to the mother's apartment, where she was screaming loudly.  She told the officers that she wanted to hurt herself and others because her boyfriend cheated on her; the police found a butcher knife and scissors near the mother.  In October 2020, the mother's therapist reported that the mother

_____

[4] Sarah, originally a subject of this petition, was placed in the permanent custody of her father.  The mother does not raise any issues concerning Sarah in this appeal.

4

was depressed with suicidal ideations.  Police and emergency medical personnel responded and found the mother walking outside with a boxcutter in her back pocket.  She was transported to the hospital to be evaluated.  After that incident, the mother failed to communicate with the department or respond to the department's phone calls; the department made two unannounced home visits, but no one answered the door.  She continued to decline to participate in substance abuse evaluations.

The mother's last in-person visit with Augustin took place in May 2019.  She overslept and missed a visit in October 2019.  In February 2020 Augustin, then twelve years old, expressed that he no longer wanted visits with his mother.[5]  He agreed to see his mother if his sister was also present, but he preferred to see his sister alone.

At trial in January 2022, the mother testified that she refused urine screens because Augustin was not removed because of her substance use disorder; she claimed to be six months sober from crack cocaine.  She later changed her testimony and reported being sober for ten years, notwithstanding testing positive for cocaine about five years earlier.  The mother did not know why her children were removed from her care.  She

_____

[5] During the remainder of 2020, the department facilitated telephone contact between the mother and Augustin.

5

recalled that the case started because of domestic violence, but claimed that she had never experienced domestic violence.

The judge found that the department had demonstrated, by clear and convincing evidence, that the mother remained unfit to parent Augustin, that her unfitness was likely to continue into the indefinite future, and that Augustin's best interests would be served by termination of the mother's parental rights.[6]  The judge declined to order postadoption visits.  The mother appeals.

Discussion.  1.  Termination of parental rights.  In deciding whether to terminate a parent's rights, a judge must determine whether there is clear and convincing evidence that the parent is unfit and, if so, whether the child's best interests will be served by terminating the legal relation between parent and child.  See Adoption of Nancy, 443 Mass. 512, 515 (2005).  Because the mother stipulated to unfitness, the sole issue at trial was whether the termination of the mother's parental rights was in Augustin's best interests, and the critical question in that regard was whether the department produced clear and convincing evidence that the mother would likely remain unfit in the future.  See Adoption of Ilona, 459 Mass. 53, 59-60 (2011).  "We give substantial deference to a

---

[6] The judge approved the department's proposed plan for Augustin to be adopted by his current preadoptive mother.

6

judge's decision that termination of a parent's rights is in the best interest of the child, and reverse only where the findings of fact are clearly erroneous or where there is a clear error of law or abuse of discretion."  Id. at 59.

The mother argues that the judge abused her discretion in terminating the mother's parental rights because the judge relied primarily on stale, prestipulation evidence.  While it is true that the judge "must focus on present circumstances of the parent and the child," Adoption of Paula, 420 Mass. 716, 731 (1995), evidence of past unfitness is relevant to current unfitness.  "A judge properly may consider a pattern of parental neglect or misconduct in determining future fitness and the likelihood of harm to the child."  Adoption of Elena, 446 Mass. 24, 33 (2006).  See Custody of Two Minors, 396 Mass. 610, 621 (1986) ("The court is permitted to assess prognostic evidence derived from prior patterns of parental neglect or misconduct in determining future fitness and the likelihood of harm to the child"); Adoption of Katharine, 42 Mass. App. Ct. 25, 32-33 (1997) (judge "may consider past conduct to predict future ability and performance").

Here, the evidence supporting unfitness, to which the mother stipulated, included domestic violence, see Adoption of Talik, 92 Mass. App. Ct. 367, 374 (2017), quoting Custody of Vaughn, 422 Mass. 590, 595 (1996) ("It is well established that

7

exposure to domestic violence works a 'distinctly grievous kind of harm' on children"); substance use disorder, see Adoption of Helen, 429 Mass. 856, 860 (1999) ("unsuccessful attempts to address substance abuse" issues properly considered in termination proceedings);[7] and failure to cooperate with the department, see Adoption of Luc, 484 Mass. 139, 146-147 (2020) (failure to recognize need for or to engage consistently in treatment is relevant to determination of unfitness); Care & Protection of Vieri, 92 Mass. App. Ct. 402, 406 (2017) (negative inference permitted from lack of cooperation with department); Adoption of Rhona, 63 Mass. App. Ct. 117, 126 (2005) ("refusal to cooperate with the department . . . is relevant to the determination of unfitness").

The evidence of the mother's conduct after her stipulation of unfitness showed that she was either still experiencing these issues or failing to acknowledge and address them. We discern no clear error or abuse of discretion in the judge's determination that the mother's longstanding issues were likely to continue in the future such that termination of parental rights was in Augustin's best interests. "It is in the best

---

[7] The mother's failure to provide urine screens, both for substance use evaluations and to allow the court clinician to complete a mental health evaluation, was certainly a factor in the judge's assessment of the evidence, but contrary to the mother's argument, it was not the sole or decisive evidence.

interests of [Augustin] to have [a parent] who can and who will, on a consistent, long-term basis, assume all parental responsibilities and who can provide [Augustin] with the stable and continuous care and nurturing [he] needs and will continue to need as a child." Adoption of Gwendolyn, 29 Mass. App. Ct. 130, 136 (1990).

Citing G. L. c. 231, § 87, and Guardianship of A.R., 99 Mass. App. Ct. 349, 355-356 (2021), the mother also argues that certain of the judge's factual findings improperly relied on the affidavit attached to the department's care and protection petition.[8] However, "[n]othing in G. L. c. 231, § 87, supports the assertion that materials submitted with a pleading thereby become categorically inadmissible." Care & Protection of Doretta, 101 Mass. App. Ct. 584, 590 (2022). "[F]irst- and second-level hearsay contained within [department] reports and official [department] records is admissible for statements of primary fact, so long as the hearsay source is specifically identified in the document and is available for cross-examination, should the party challenging the evidence request to do so" (footnotes omitted). Adoption of Luc, 484 Mass. at 153. See Mass. G. Evid. § 1115(b)(2)(B) (2023). The parts of

---

[8] We discern no basis for the mother's claim that the judge relied on G. L. c. 119, § 51A, reports for anything other than setting the stage.

the affidavit upon which the judge relied met these criteria for admissibility.

Finally, the mother claims that the judge erred in finding that the mother "stopped attending foster care reviews" and "has not attended a foster care review."  "A finding is clearly erroneous when there is no evidence to support it, or when, 'although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'"  Custody of Eleanor, 414 Mass. 795, 799 (1993), quoting Building Inspector of Lancaster v. Sanderson, 372 Mass. 157, 160 (1977).  While the mother is correct that the evidence does not support a finding that she never attended a foster care review, her foster care review attendance did not play a significant part in the judge's ultimate conclusion.  Even without this finding, the judge's determination that the mother was likely to remain unfit is supported by clear and convincing evidence.  See Care & Protection of Olga, 57 Mass. App. Ct. 821, 825 (2003); Petition of the Catholic Charitable Bureau of the Archdiocese of Boston, Inc., to Dispense with Consent to Adoption, 18 Mass. App. Ct. 656, 662 (1984).[9]

---

[9] "Despite the moral overtones of the statutory term 'unfit,' the judge's decision was not a moral judgment or a determination that the mother . . . do[es] not love the child."  Adoption of Bianca, 91 Mass. App. Ct. 428, 432 n.8 (2017).

10

2.  Visitation.  The mother also argues that she was present in Augustin's life, had a bond with him, and that the judge should have ordered postadoption visitation.  We discern no error or abuse of discretion.  To determine whether to order such visitation, the judge must consider the relationship and emotional bond between the child and the parent, see Adoption of Vito, 431 Mass. 550, 562 (2000), as well as the child's age, see Adoption Rico, 453 Mass. 749, 757 n.15 (2009).  The judge should also consider the child's relationship with the preadoptive parent or parents, and whether visitation decisions should be left to their judgment.  See Adoption of Ilona, 459 Mass. at 64-66.

Here, the evidence supported the judge's finding that the mother had no significant relationship with Augustin.  While the mother may have had an initial bond with Augustin, the bond had substantially diminished by the time of trial.  "The purpose of such contact is not to strengthen the bonds between the child and his biological mother or father, but to assist the child as he negotiates, often at a very young age, the tortuous path from one family to another."  Adoption of Vito, 431 Mass. at 564-565.  We discern no abuse of discretion in the judge's determination

that ordering postadoption visitation was not in Augustin's best interests.

Decree affirmed.

By the Court (Milkey,
  Massing & Henry, JJ.[10]),

*Joseph F. Stanton*

Clerk

Entered:  May 26, 2023.

---

[10] The panelists are listed in order of seniority.

12