NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case.  A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-70

ADOPTION OF NANDO.[1]


MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Following a trial, a judge of the Juvenile Court issued a decree finding the mother unfit to parent her son, Nando, terminated the mother's parental rights, committed Nando to the permanent custody of the Department of Children and Families (department), and approved the department's plan for adoption.[2] The mother appeals, arguing that the judge abused her discretion by prematurely terminating the mother's parental rights while she was engaging in services and making progress toward parental fitness.  We affirm.

---

[1] A pseudonym.

[2] The judge also terminated the parental rights of the putative father.  He did not participate in the trial and does not join in this appeal.

Background.  Nando was born substance exposed in June 2022. He weighed roughly four pounds at birth and tested positive for fentanyl, cocaine, and methadone.  He spent three weeks in the neonatal intensive care unit to recover from neonatal abstinence syndrome.  The department immediately filed a care and protection petition pursuant to G. L. c. 119, § 24.  The department took emergency custody of Nando in the hospital and subsequently moved him into a kinship placement, where he remained at the time of trial on the termination of parental rights.  In his kinship placement, Nando lives with his older half-brother,[3] his preadoptive parents, and their five children, all of whom he has bonded with.  The mother has never had custody of Nando and has never lived with him.

After Nando was born, the mother left the hospital against medical advice, in part because she wanted to continue using substances.  Between June 2022 and January 2023, the mother's contacts with the department were sparse.  The judge found that the mother was homeless during this interval.  She did not see Nando at all and did not request any visits with him.

In January 2023, the mother was arrested for threatening staff members at a detoxification facility.  The mother was

_____

[3] The mother's parental rights to Nando's half-brother had already been terminated in a prior proceeding.

incarcerated for one month on preexisting default warrants.  She subsequently entered a prerelease program and moved into a residential drug treatment facility as a condition of her probation.  At the time of trial, which took place over six nonconsecutive days between March 2023 and August 2023, the mother continued to reside in the drug treatment facility.

Upon arriving at the drug treatment facility in March 2023, the mother's compliance with the department's family action plan improved.  Notably, the judge found that at the time of trial, the mother had been sober for five months.  Between March 2023 and July 2023, the mother had at least six supervised visits with Nando.  During the visits, she behaved appropriately and never appeared to be under the influence.

The mother's progress on the family action plan was not uniformly positive, however.  To address the mother's extensive history of mental health challenges, the family action plan required the mother to undergo treatment with an individual therapist.  Although the mother testified that she had engaged a therapist, she failed to sign releases related to her mental health treatment.  The judge did not credit this testimony and found that the mother had failed to participate in individual therapy.

The mother also failed to meaningfully address her long-standing housing insecurity.  The drug treatment facility did

not allow children to live there, and the mother was required to remain at the facility as a condition of her probation. The judge found it was impossible for the mother to take custody of Nando and that she had no concrete plans for her housing after leaving the facility. The mother has never lived on her own and testified that she does not know how to run a household.

At the trial on the termination of her parental rights, the mother conceded that she was unable to take custody of Nando but argued that she would become fit by continuing to engage in services. In her findings and conclusions of law, the judge ruled that the mother's unfitness was not temporary and that it was in the best interests of Nando to terminate the mother's parental rights.

Discussion. 1. Termination of parental rights. "To terminate parental rights to a child, the judge must find, by clear and convincing evidence, that the parent is unfit and that the child's 'best interests will be served by terminating the legal relation between parent and child.'" Adoption of Luc, 484 Mass. 139, 144 (2020), quoting Adoption of Ilona, 459 Mass. 53, 59 (2011). The judge "must also find that the current parental unfitness is not a temporary condition." Adoption of Virgil, 93 Mass. App. Ct. 298, 301 (2018). The judge is afforded discretion in assessing the evidence and determining the best interests of the child. See Adoption of Jacob, 99 Mass. App.

4

Ct. 258, 266 (2021). An abuse of discretion occurs when the judge makes "a clear error of judgment in weighing the factors relevant to the decision . . . such that the decision falls outside the range of reasonable alternatives" (quotation omitted). L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014).

a. Unfitness. At trial, the mother conceded that she could not take custody of Nando because the drug treatment facility does not allow children to live there. The issue is whether the judge abused her discretion by finding that the mother's unfitness was not temporary. We cannot conclude that the judge abused her discretion. The mother's struggles with substance misuse, mental illness, and homelessness were long-standing. See Adoption of Ilona, 459 Mass. at 62 (judge did not abuse her discretion in terminating parental rights where parent's shortcomings were long-standing and improvement was not significant). Although the judge found that the mother had achieved five months of sobriety at the time of trial, she did not make the same progress toward addressing her housing and mental health concerns. See Adoption of Elena, 446 Mass. 24, 30 n.4 (2006) ("sobriety and efforts at rehabilitation at the time of trial do not require a finding of current fitness"). The judge found that the mother was not forthright about her failure to undergo treatment with a therapist and had no concrete plans for housing.

5

The mother argues that the judge should have given her six more months to continue her recovery with the aim of becoming fit to parent Nando. The judge was not required to wait in abeyance for an uncertain recovery. See Adoption of Elena, 446 Mass. at 34 n.6 ("A judge may say 'enough' when faced with an indeterminate period of time required for parental recovery, if recovery is a viable possibility"). Between June 2022 and January 2023, the mother had virtually no contact with the department and never visited Nando. See id. at 32 (mother made no effort to contact children during the four months after they were removed from her care and did not engage in services during that time). Only after the mother's arrest and detoxification did she begin to engage with the family action plan. As the judge observed, the mother's progress was "too little, too late."

Even after this point, the mother's compliance with the family action plan was inconsistent at best. See Adoption of Rhona, 63 Mass. App. Ct. 117, 126 (2005) (parent's failure to cooperate with department's service plan was relevant to determination of unfitness). The judge found that the mother failed to consult with an individual therapist to address her mental health conditions. The mother's lack of a concrete housing plan was also probative of permanent unfitness, given that she had never lived on her own before. The mother's

6

progress in maintaining her sobriety is commendable.  We cannot conclude, however, that the judge abused her discretion in terminating parental rights where the mother's shortcomings were persistent and her attention to the family action plan was both belated and incomplete.  See Adoption of Flavia, 104 Mass. App. Ct. 40, 50 (2024) (even where there are recent improvements, court may view a "constellation of factors" combined with "lack of transparency" that "creates a likelihood that old patterns of . . . unhealthy behavior may recur" [citation omitted]).

   b.  Best interests of the child.  The judge did not abuse her discretion by concluding that the best interests of Nando would be served by terminating the mother's parental rights.  See Adoption of Talik, 92 Mass. App. Ct. 367, 370 (2017) (judge must determine whether termination of parental rights is in child's best interests).  The judge found that Nando's preadoptive parents have cared for his special needs, which include verbal and developmental delays.  In comparison, the judge concluded that the mother lacked an interest in Nando's health, did not understand his needs, and had not attended his medical appointments or communicated with his doctors.  See Adoption of Abigail, 23 Mass. App. Ct. 191, 193 (1986) (child's special needs relevant in determining parental fitness as to that child).  Further, Nando has formed strong bonds with his kinship preadoptive parents, whom he refers to as "mama" and

"dada."  The judge did not abuse her discretion by concluding that removing Nando from his kinship placement would cause significant psychological harm and that termination of the mother's parental rights was in the child's best interests.[4]

                        Decree affirmed.

                        By the Court (Blake, C.J.,
                          Meade & Grant, JJ.[5]),

                        *Paul Little*

                        Clerk


Entered:  March 26, 2025.

---

[4] In her brief, the mother viewed with disfavor the judge's use of the term "substance abuse."  This issue was not raised before the Juvenile Court and is waived.  See Adoption of Willow, 433 Mass. 636, 651 (2001).  See also Standards on Substance Use Disorder & Mental Health Conditions, adopted by the Supreme Judicial Court on October 10, 2023, after the decree issued in this case.  Regardless, the mother conceded at oral argument that this was not an appellate argument.

[5] The panelists are listed in order of seniority.