## Adoption of Nancy & another.[1]

Middlesex. December 7, 2004. - February 24, 2005.

Present: Marshall, C.J., Greaney, Ireland, Spina, Cowin, Sosman, & Cordy, JJ.

*Adoption,* Care and protection, Dispensing with parent's consent. *Parent and Child,* Care and protection of minor, Dispensing with parent's consent to adoption. *Minor,* Care and protection, Adoption.

In an action on a petition to dispense with parental consent to adoption pursuant to G. L. c. 210, § 3, the judge's conclusion that the father's parental rights should be terminated was not clearly erroneous, where the judge enumerated multiple reasons for her conclusion that the father was presently unfit to parent and would be unfit to parent in the future, and where, while the judge's findings did not specifically state the reasons that termination was in the children's best interests, such a conclusion was implicit in her findings. [514-516]

In an action on a petition to dispense with parental consent to adoption pursuant to G. L. c. 210, § 3, the judge did not err in terminating the father's parental rights with regard to his two daughters, despite the fact that neither of the girls' permanency plans required termination, because termination need not be a prerequisite to a permanency plan [516-518]; moreover, the judge did not err in failing to make a precise finding on the girls' wishes with respect to the termination decrees [518-520].

Petition filed in the juvenile session of the Ayer Division of the District Court Department on September 25, 1998.

The case was heard by *Martha P. Grace,* J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Brian Pariser* for Department of Social Services.

*Andrew Hoffman,* Committee for Public Counsel Services, for the father.

*Garry M. O'Brien* for the children.

Ireland, J. This is an appeal from the grant of a petition to

---

[1] Rachel, both pseudonyms. For consistency, we use the same pseudonyms assigned by the Appeals Court.

dispense with parental consent to adoption pursuant to G. L. c. 210, § 3. After the decrees were entered in the juvenile session of the Ayer division of the District Court Department, the father appealed to the Appeals Court, which vacated the portion of the decrees terminating the father's parental rights. *Adoption of Nancy*, 61 Mass. App. Ct. 252 (2004).[2] We granted the application of the Department of Social Services (department) for further appellate review to determine whether the trial judge erred in terminating the father's parental rights to his two daughters where termination was not a prerequisite to the implementation of the children's permanent plans. The children joined their father in appealing from the decrees, claiming that they have been rendered "legal orphans." Because we conclude that termination need not be a prerequisite to implementation of a permanent plan and that the trial judge's factual findings clearly support the determination that termination of parental rights served the children's best interests, we affirm the decision to terminate the father's parental rights.

*Background.*

We recount the relevant facts, reserving certain details for our discussion. Nancy was born in 1990, and Rachel was born in 1991. In 1997, the girls' mother left the girls' father, who is an alcoholic, claiming that the father physically abused her. She did not take the girls with her but left them in their father's care. The department first filed an emergency care and protection petition in the District Court in September, 1998, alleging neglect, and subsequently, the girls were removed from their father's care. At that time, the father had a drinking problem, and his home was well known to police. When the father drank, he left the girls unattended or with inappropriate caretakers. Although the girls were returned to their father's care in November, 1998, they were permanently removed from his care in October, 1999, due to his chronic alcohol abuse.

The department's goal at the time the girls were removed from their father's care was reunification. That goal changed, however, after the father repeatedly failed to comply with the terms of his service plan, which required him to participate in

---

[2] The mother has not appealed from the decree terminating her parental rights and is not a party to this appeal.

long-term residential alcohol treatment programs.[3] The father's persistent pattern has been to enter a detoxification program and, shortly thereafter, to return to alcohol abuse. He has never participated in an extended treatment program and has been unwilling to admit or believe that he has a problem with alcohol. Since being removed from their father's home, the girls have had minimal contact with either parent.[4]

The department's permanency plan for Nancy is that her foster parents become her guardians. The permanency plan for Rachel is long-term substitute care with recruitment of an adoptive family when she is stabilized. The judge found that the department's plans for the girls were appropriate, considered their needs and desires, and were in their best interests.

*Discussion.*

The father does not claim error in the judge's conclusion that he is currently unfit to care for his daughters. He asserts, however, and the Appeals Court agreed, that the judge erred in terminating his parental rights, because there was no evidence that termination furthered the girls' best interests, neither child's permanency plan required termination, and the judge failed to consider the girls' wishes regarding termination of their father's parental rights. We disagree, and discuss each issue in turn.[5]

1. *Evidence for termination.* In determining whether to dispense with parental consent to adoption, a judge must "evaluate whether the [parent is] able to assume the duties and responsibilities required of a parent and whether dispensing with the need for parental consent will be in the best interests of the children." *Adoption of Mary*, 414 Mass. 705, 710 (1993). Because the termination of parental rights is an "extreme step," *Adoption of Frederick*, 405 Mass. 1, 5 (1989), quoting *Petition of the Dep't of Social Servs. to Dispense with Consent to Adoption*, 391 Mass. 113, 119 (1984), we require that the judge articulate specific and detailed findings in support of a conclu-

---

[3]The judge made it clear to the father on numerous occasions that his alcohol abuse would lead to his children being permanently removed from his care and his parental rights being terminated.

[4]The mother had not scheduled any visits with the girls from February, 2000, to the date of the judge's decision in 2002.

[5]We acknowledge, but need not discuss, all of the parties' arguments.

sion that termination is appropriate, demonstrating that she has given the evidence close attention. See *Adoption of Hugo*, 428 Mass. 219, 224 (1998), cert. denied sub nom. *Hugo P.* v. *George P.*, 526 U.S. 1034 (1999); *Care & Protection of Laura*, 414 Mass. 788, 791 (1993); *Adoption of Frederick, supra* at 4-5. Subsidiary findings must be supported by a preponderance of the evidence, *Adoption of Helen*, 429 Mass. 856, 859 (1999), and none of the findings will be disturbed unless clearly erroneous. *Adoption of Greta*, 431 Mass. 577, 587 (2000). *Custody of Eleanor*, 414 Mass. 795, 799 (1993). We review the judge's findings with substantial deference, recognizing her discretion to evaluate a witness's credibility and to weigh the evidence. *Adoption of Quentin*, 424 Mass. 882, 886 (1997).

Although recognizing that the evidence supported the judge's conclusion of the father's current unfitness, the Appeals Court stated that the evidence "did not rise to the level of clear and convincing proof needed to terminate the father's rights." *Adoption of Nancy*, 61 Mass. App. Ct. 252, 258 (2004). We disagree. The standard for parental unfitness and the standard for termination are not separate and distinct, but "reflect different degrees of emphasis on the same factors." *Petition of the New England Home for Little Wanderers to Dispense with Consent to Adoption*, 367 Mass. 631, 641 (1975). This is not to say that the judge can conflate the two issues; it is a two-part analysis. The finding of parental unfitness by clear and convincing evidence is the "critical inquiry." *Adoption of Peggy*, 436 Mass. 690, 701, cert. denied sub nom. *S.T.* v. *Massachusetts Dep't of Social Servs.*, 537 U.S. 1020 (2002), quoting *Care & Protection of Laura, supra* at 793. After ascertaining unfitness, the judge must determine whether the parent's unfitness is such that it would be in the child's best interests to end all legal relations between parent and child. See *Adoption of Carlos*, 413 Mass. 339, 350-351 (1992); *Petition of the Dep't of Social Servs. to Dispense with Consent to Adoption, supra* at 119. In determining whether the best interests of the children will be served by issuing a decree dispensing with the need for consent, a "court shall consider the ability, capacity, fitness and readiness of the child's parents . . . and shall also consider the plan proposed by the department or other agency initiating the petition."

G. L. c. 210, § 3 (c). Both girls and their father argue that the judge erred by failing to make specific findings regarding how termination would be in the girls' best interests.

The judge's findings make clear that her decision to sever legal ties between the girls and their father was based on her determination that there was no hope that the father would stop drinking and, thus, would not be capable of any normal parenting duties. The judge enumerated multiple reasons for her conclusion that the father was currently unfit to parent and would be unfit to parent in the future.[6] She repeatedly referenced the father's inability or unwillingness to attend alcohol treatment programs and stated, "History is very relevant and very predictive in this case." While not specifically stating the reasons that termination was in the children's best interest, the judge's factual findings were specific and detailed, demonstrating that close attention was paid to the evidence and the fourteen factors listed in G. L. c. 210, § 3 (c). Although it would be better practice specifically to state the reasons that termination is in the child's best interest, such specificity is not required. The judge had discretion to conclude that termination was appropriate. See *Adoption of Hugo, supra* at 225, quoting *Adoption of a Minor (No. 2),* 367 Mass. 684, 688 (1975) ("We recognize that in this field it is neither possible nor desirable to make decisions with precision, and that 'much must be left to the trial judge's experience and judgment' "). Here, it is implicit in the judge's findings that termination is in the best interests of the children, and by no means can the judge's decision be said to be clearly erroneous.

2. *Permanency plans.* The father and the girls also argue that termination of the father's parental rights was error because neither of the girls' permanency plans required termination, and termination rendered the girls legal orphans. The Appeals Court focused on the fact that termination was not absolutely essential at this time for either permanency plan. *Adoption of Nancy, supra* at 258. However, G. L. c. 119, § 26 (4), provides that a

_____

[6]In addition to being unable to commit to sobriety, the father failed to cooperate fully with the department's service plans even though the judge made it clear that if the father failed to comply, his parental rights could be terminated.

judge "may enter an order to dispense with the need for consent of any person named in [G. L. c. 210, § 2], to the *adoption, custody, guardianship or other disposition* of the child . . . upon a finding that the child is in need of care and protection . . . and that the best interests of the child will be served by such an order" (emphasis added). The statute thus provides a greater range of permanent placement options for children than simply limiting placement to adoption, and the department is not required to retry a parent's unfitness in the event the proposed plan for a child changes. The statute's plain language indicates an intent to place children in permanent situations, though not necessarily through adoption.

Here we have a case where the children are finally in stable situations. Both girls are in foster care and have been since 1999. Nancy appears happy and bonded with her foster parents. Rachel, a very impulsive child diagnosed with depression and attention deficit hyperactivity disorder, is in a specialized foster home where she receives weekly individual therapy and medication to control her impulsivity and hyperactivity. Before visits with her father, Rachel would get agitated and had a difficult time controlling herself. Shortly after the visits, she would get angry and lash out at her foster family, pets, and people at school. Both girls are doing well in their foster placements. In these circumstances, where the father has had ample opportunity to achieve fitness as a parent but has failed to follow through, it is only fair to the children to say, at some point, "enough." After waiting five years in the hope that their father would treat his alcohol addiction, it is not now in their best interests to ask the girls to wait an unknown additional period, perhaps until they reach the age of majority, in the hopes that their father might eventually engage in a meaningful way in alcohol abuse treatment.

Stability in the lives of children is important, particularly in a case that has continued for a long period of time in the hope that the father could and would successfully rehabilitate himself. See *Adoption of Willow*, 433 Mass. 636, 647 (2001), citing *Adoption of Hugo, supra* at 228-229. We agree with the judge that these children deserve permanence and stability, which will be eased by termination of their father's rights. Furthermore, as

the father concedes in his brief, there are various reasons to terminate parental rights even when it is not a prerequisite for the implementation of the permanency plan.[7] Therefore, we conclude that termination need not be a prerequisite to a permanency plan.

3. *Wishes of the children.* Finally, the girls and their father argue, and the Appeals Court concluded, that the judge erred in failing to consider each girl's "wishes as to the extreme step of the termination of their father's parental rights." *Adoption of Nancy, supra* at 258. Although the judge made multiple findings regarding the girls' wishes and concerns about their father, including their desires to maintain future contact with him, no findings specifically addressed their wishes with respect to the legal issue whether termination would be in their best interests. Both girls, represented by new counsel, argue against termination. A judge should consider the wishes of the children in making custodial determinations, and those wishes "are entitled to weight in custody proceedings." *Care & Protection of Georgette,* 439 Mass. 28, 36 (2003), and cases cited. The girls, ten and eleven years old at the time of trial, were certainly old enough to have their views considered. See *Custody of Vaughn,* 422 Mass. 590, 599 n.11 (1996), and cases cited. Their views, however, are neither decisive, see *id.,* nor outcome determinative. *Care & Protection of Georgette, supra.*

The record reflects that the judge clearly elicited the girls' wishes and weighed such wishes in determining whether to terminate their father's parental rights. She made numerous detailed findings regarding the wishes of the girls regarding placement and visitation with their father. Specifically, the judge found that although both girls expressed a desire to continue visitation with their parents in the future, Rachel does not want to live with her father and fears him, and Nancy is happy and bonded with her foster parents, who she would like to become

---

[7]The father cites recruitment of an adoptive family as one reason to terminate parental rights. Moreover, the father concedes that termination is appropriate when the eventual goal for the child is adoption, but due to a disability or other factors, the child is not presently a candidate for adoption. In this case, Rachel's long-term goal is adoption once she becomes stabilized. Thus, by the father's argument, termination was appropriate given Rachel's long-term plan.

her guardians. The judge further found that the last time either girl expressed a desire to reside with their father was in the summer of 2000, and as of June, 2001, Nancy was no longer asking even to see her parents. Finally, the judge found that Rachel expressed concern over her father's inability to keep her safe and that he would revert to his old behaviors. Thus, it is clear that the judge recognized the girls' wishes of continuing contact with their parents and weighed those wishes in her determination.

There is nothing in the Committee for Public Counsel Services (CPCS) standards, or in our cases, recommending that children be asked to express an opinion on what is in their best interests, as that is essentially a legal judgment. Further, had the girls expressed a preference that their legal ties to their father not be severed, that question, arguably, is one on which a ten or eleven year old child is incapable of making "an adequately considered decision."[8] CPCS Assigned Counsel Manual, Standard 1.6(*d*) of the Performance Standards Governing the Representation of Children and Parents in Child Welfare Cases (2004). Asking children whether they feel their parents' rights should be terminated places an enormous psychological burden on the children. The failure of the girls' trial counsel to elicit, or the failure of the judge to make a precise finding on, the girls' views with respect to the termination decrees was not error.

Moreover, there is no indication that the judge was punishing the father by terminating his parental rights. See *Adoption of Helen*, 429 Mass. 856, 862 n.10 (1999). See also *Adoption of Don*, 435 Mass. 158, 168 (2001). There can be no doubt that the judge's termination order was based on her assessment of the over-all damage that the father's noncompliance had wrought on the girls' lives, and her determination that they should be protected from the uncertainty of repeated litigation and their father's destructive behavior in the future. See *Adoption of Willow*, *supra* at 641, 647-648 (recognizing that

---

[8]In such circumstances, the CPCS standards permit the children's counsel to render a substitute judgment, if doing so would protect the children from "substantial harm." *Care & Protection of Georgette*, 439 Mass. 28, 45-46 (2003), citing CPCS Assigned Counsel Manual, Standard 1.6(*c*) and (*d*) of the Performance Standards Governing the Representation of Children and Parents in Child Welfare Cases (1999).

prolonged pattern of failed treatment threatens children's future stability).

*Conclusion.*

Although a finding of parental unfitness will not always lead to termination of parental rights, for the reasons stated above, we conclude that the judge's factual findings clearly support the determination that the termination of parental rights served the children's best interests. Moreover, we conclude that termination may be ordered, even though termination is not a necessary prerequisite to a child's permanency plan. The decrees dispensing with the father's consent to adoption are affirmed.

*So ordered.*