The mother appeals from findings of unfitness made by a judge of the Juvenile Court as to all the children; decrees terminating her parental rights to the five youngest children (including Ugo); and the judge's refusal to order posttermination and postadoption visits with the five youngest children. Ugo appeals from the decree terminating the mother's parental rights as to him.[3] We affirm.
1. Sufficiency of the evidence regarding parental unfitness.[4] A judge must find, by clear and convincing evidence, that the biological parent is currently unfit to further the welfare and best interests of each child before terminating parental rights. See Adoption of Kimberly, 414 Mass. 526, 528-529 (1993). See also G. L. c. 210, § 3. "Generally, no one factor is determinative and the judge should weigh all the evidence." Petitions of the Dept. of Social Servs. to Dispense with Consent to Adoption, 399 Mass. 279, 290 (1987). "The judgment must analyze the parent's character, temperament, capacity and conduct in relation to the particular child's needs, age, affections and environment." Adoption of Carlos, 413 Mass. 339, 348 (1992).
Before terminating parental rights, the judge is required "to make specific and detailed findings." Adoption of Gregory, 434 Mass. 117, 126 (2001). "We give substantial deference to a judge's decision that termination of a parent's rights is in the best interest of the child, and reverse only where the findings of fact are clearly erroneous or where there is a clear error of law or abuse of discretion." Adoption of Ilona, 459 Mass. 53, 59 (2011).
Here, the judge's findings of fact clearly and convincingly support her ultimate finding that the mother is unfit to care for each of the children.[5] The judge's findings of fact and consideration of the factors enumerated in G. L. c. 210, § 3, demonstrate that (1) the mother had over a decade-long history of serious abuse and neglect of her children;[6] (2) she lacks the necessary understanding of her children's special needs;[7] (3) she suffers from mental health disorders and substance abuse problems and fails to utilize services on a consistent basis; and (4) she lacks insight into her responsibility for why the children were removed.
We note, as did the judge, that the mother complied with much of her service plan. Specifically, the mother graduated from a twelve-week parenting class and attended two anger management classes. Additionally, the mother attended many of her scheduled parent-child visits and showed improvement in several areas. Nevertheless, the mother did not effectuate a substantial and material change in the actions and behavior that had led to a long history of involvement with the Department of Children and Families (DCF). Her testimony at trial consistently showed a lack of responsibility for and recognition of her actions that caused the abuse and neglect of the children. Accordingly, there was sufficient evidence to clearly and convincingly establish that the mother was unfit and that her unfitness would continue into the indefinite future to a near certitude. See Adoption of Jacques, 82 Mass. App. Ct. 601, 606 (2012).
2. Termination of parental rights. "After ascertaining unfitness, the judge must determine whether the parent's unfitness is such that it would be in the child's best interests to end all legal relations between parent and child." Adoption of Nancy, 443 Mass. 512, 515 (2005). "[O]n-going, repeated patterns of serious parental neglect and abuse ... can be relied on by the judge when determining parental unfitness." Adoption of Mary, 414 Mass. 705, 711 (1993). Here, in addition to the detailed and numerous findings of the mother's unfitness, the judge's conclusion that it was in the best interests of the five youngest children to terminate the mother's parental rights as to them was supported by the record. The judge carefully evaluated the best interests of each child individually as evidenced by her decision not to terminate the mother's parental rights as to the oldest child. See note 4, supra. The mother has a lengthy history of physically and emotionally abusing her children and refuses to take responsibility for her actions or show an ability to change. The mother continues to place her children at risk for further abuse by exposing them to dangerous living conditions and continuing to have relationships with violent and abusive partners. We therefore conclude that the judge's factual findings clearly support the determination that the termination of the mother's parental rights as to the five youngest children served their best interests. See, e.g., Care & Protection of Bruce, 44 Mass. App. Ct. 758, 761 (1998) ; Care & Protection of Lillith, 61 Mass. App. Ct. 132, 139 (2004) ; Adoption of Anton, 72 Mass. App. Ct. 667, 676 (2008).
3. Ugo's appeal. Ugo, who was fourteen years old at the time of the trial, independently appeals from the decree terminating the mother's rights as to him. He argues on appeal, as he did at trial, that his best interests lie in not terminating the rights of the only parent he has ever known, and that he should have continued access to the mother's support and "consistent care." "A judge should consider the wishes of the children in making custodial determinations." Adoption of Nancy, 443 Mass. at 518. Here, the judge gave Ugo's expressed wishes appropriate weight. The judge's findings explain that the plan for Ugo is to place him with his father once he is "healthy and safe enough to leave residential care and maintain himself outside of care for a period of time." Based on the judge's findings of fact, the judge did not abuse his discretion when making this determination, especially when considering the mother's history of neglect of Ugo's substantial special needs.[8] See Care & Protection of Vick, 89 Mass. App. Ct. 704, 710 (2016) ("The child's wishes, however, are neither decisive nor outcome dispositive, ... and must be considered against the backdrop of the mother's unfitness").
4. Posttermination and postadoption visitation. The mother argues that the judge should have ordered visitation with the children to whom her parental rights were terminated. "In determining whether to exercise the authority to order visitation, a judge must ask two questions: First, is visitation in the child's best interest? Second, in cases where a family is ready to adopt the child, is an order of visitation necessary to protect the child's best interest, or may decisions regarding visitation be left to the judgment of the adoptive family?" Adoption of Ilona, 459 Mass. at 63. Here, the judge found that there was no significant bond between the mother and the three youngest children and that it would be in those children's best interests to leave the question of posttermination and postadoption contact to the discretion of their legal guardians. The judge also found that since another one of the children (Ugo's twin brother) did not want to have visits with the mother, "any visits shall be left to the sound discretion of his father," who has permanent custody of that child. Finally, with regard to Ugo, the judge found "that although there may be some evidence of a bond between Ugo and Mother, given his severe mental health issues, contact with Mother shall be left to the sound discretion of his legal guardian." We see no error in any of those findings. See Adoption of Vito, 431 Mass. 550, 563-564 (2000).
5. DCF's efforts. The mother argues that the judge failed "to acknowledge [that Mother's] low I.Q. was barely above retardation and the services required to address Mother's needs are different than someone with an average I.Q." The mother contends that because DCF's service plans failed to account for the mother's cognitive limitations and disabilities in violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12131 - 12134 (2012), DCF violated its mandate to provide reasonable efforts to preserve family integrity. See Adoption of Ilona, supra at 61 ("Where a parent ... has cognitive or other limitations that affect the receipt of services, the department's duty to make reasonable efforts to preserve the natural family includes a requirement that the department provide services that accommodate the special needs of a parent"). However, because the mother failed to raise a challenge until the termination proceedings, any claimed violation is not properly before us on appeal. See Adoption of Gregory, 434 Mass. at 124. The mother could have raised her claim of inadequate services numerous times prior to the termination proceedings to properly preserve this issue for appeal.[9] See ibr.US_Case_Law.Schema.Case_Body:v1">id. at 124-125. See also Adoption of Uday, 91 Mass. App. Ct. 51, 53-54 (2017).
Judgment as to oldest child affirmed.
Decrees as to five youngest children affirmed.

The children's fathers did not appeal from the judge's disposition of their cases.

As an initial matter, we conclude that the mother's challenges to the judge's impartiality are without merit. For the reasons stated in the brief of the Department of Children and Families (DCF) at pages fifty through fifty-two, these challenges are unsupported by the record, or simply a disagreement with the judge's weighing of the evidence and credibility determinations. See Adoption of Hugo, 428 Mass. 219, 229 (1998), cert. denied, 526 U.S. 1034 (1999).

The judge found that it was in the best interests of the oldest child for the mother to retain parental rights as to her, and entered judgment awarding permanent custody of that child to DCF.

Some of the most egregious examples of such conduct include: multiple instances of physical abuse toward the children; exposure of the children to domestic violence and sexual assault; and neglect of the children's special medical, emotional, and developmental needs.

Each of the children exhibits significant mental and emotional trauma that can be traced to the mother's actions and omissions. Three of the children have required extensive stays in specialized residential care and each of the children will require therapy for the foreseeable future.

Ugo argues that the judge erred in ignoring the fact that he does not want to live with his father. We note that Ugo could only be returned to his father's custody if DCF, after consultation with his mental health care providers, deemed it in his best interests.

Ugo "adopts Mother's facts and argument related to Mother's intellectual disability." Even assuming that Ugo has standing to make such an argument, we do not find it persuasive for the reasons stated.