NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-1250

ADOPTION OF GIANNA (and a companion case[1]).

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Following a review and redetermination trial, a Juvenile Court judge terminated the mother's parental rights regarding her two youngest daughters, Gianna and Amy (together, the children), who had not seen the mother in over four years. Having failed to appear at the trial, the mother filed a motion for relief from judgment and sought to reopen the evidence so that she could testify.  The trial judge scheduled a hearing for the mother to present evidence, and thereafter ordered the decrees to stand when the mother failed to appear.  On appeal, the mother challenges the termination decrees.  We affirm.

Background.  The mother suffers from diagnosed mental health issues including posttraumatic stress disorder, anxiety

---

[1] Adoption of Amy.  The children's names are pseudonyms.

disorder, mood disorder, and attention deficit hyperactivity disorder. She has been inconsistent in taking prescribed medications for these conditions and has been hospitalized on multiple occasions. She has also experienced a history of substance abuse (with no evidence of a treatment program since 2014), housing instability, and multiple incidents of domestic violence witnessed by the children.

The mother has five children -- two adult daughters, a son (adopted in 2012), and Gianna and Amy (age fourteen and ten, respectively, at the time of trial). Gianna and Amy are the subject of the termination decrees at issue here. As to the children, the Department of Children and Families (department) became involved with each at birth. When Gianna was born in May 2009, a report filed pursuant to G. L. c. 119, § 51A (51A report), alleged that both Gianna and the mother tested positive for cocaine. Following the premature birth of Amy in February 2013, another 51A report alleged that both the mother and Amy tested positive for cocaine.

About five years later, on August 11, 2018, the event precipitating department custody occurred when the mother's two adult daughters had the children for an overnight visit. Originally, the plan was that the mother would pick up the children the next day, but after the mother did not show up, the adult daughters attempted to contact her. Ultimately, the

mother responded by sending a text message to the adult daughters stating that they could keep the children as they would do a better job raising them. She also asked the adult daughters to say goodbye to the children for her. Unsure how to proceed, the adult daughters contacted the department, and the department obtained emergency custody. On August 13, the department reached out to the mother, who denied making the statements and hung up the phone.

The following day, the department filed a care and protection petition regarding the children. On August 16, the mother waived a temporary custody hearing and stipulated that the children would remain in the department's temporary custody. The mother last visited with the children in February 2019. Since this visit, the mother has had no contact with them and inconsistent communication with the department.

On July 24, 2019, following a trial where the mother did not appear, a judge found the mother (and the children's fathers) unfit and the children in need of care and protection. The judge appointed coguardians for the children. Four years later, seeking termination of parental rights and desiring permanency with their coguardians, the children filed a petition for review and redetermination in February 2023. On June 8, 2023, a second judge held a review and determination trial where the mother did not appear. The parties stipulated that the

children had not seen the mother in over four years. Based upon clear and convincing evidence, the judge terminated the mother's parental rights after concluding that she remained unfit and would likely remain so for the indefinite future and that termination would be in the best interests of the children.

On July 13, 2023, the mother filed a motion for relief from judgment and sought to reopen the evidence to allow her to provide testimony. The judge scheduled a hearing for the mother to testify on October 4, 2023, but the mother failed to appear. The judge issued an order stating, "Termination Stands."

Discussion. At a review and redetermination proceeding under G. L. c. 119, § 26 (c), "the judge is deciding simply whether to maintain the separation of parent from child." Care & Protection of Erin, 443 Mass. 567, 571 (2005). "The proper focus of inquiry on a § 26 review is on those facts which have undergone some metamorphosis since the previous order or are newly developed and, in consequence, alter the relationship between the biological parent and the child." Custody of a Minor (No. 2), 22 Mass. App. Ct. 91, 94 (1986). Ultimately, "the department must show, by clear and convincing evidence, that the parent remains unfit, that the child remains in need of care and protection, and that his or her best interests are served by removal or termination of parental custody." Adoption of Melvin, 71 Mass. App. Ct. 706, 713 (2008). Giving

4

substantial deference to the judge's decision, we discern no clear error or abuse of discretion. See Adoption of Ilona, 459 Mass. 53, 59 (2011).

1. Staleness of evidence. We disagree with the mother's claim that the judge's findings "lack the requisite recency and detail" to support termination. While a judge may not rely on stale information, see Guardianship of Kelvin, 94 Mass. App. Ct. 448, 457 (2018), a judge may consider whether circumstances have changed over time. "For example, the mother's mental health may have taken a marked turn for the better, or conversely, for the worse; the mother's physical environment may have improved, or not; the ability of the mother to play the role of a competent, supporting parent may have improved, or not." Custody of a Minor (No. 2), 22 Mass. App. Ct. at 94. See Care & Protection of Erin, 443 Mass. at 570 (judge at review and redetermination hearing does not start with "blank slate"). The judge need not find that "a material change in circumstances has occurred" to alter the previous order. Custody of a Minor (No. 2), supra. "Indeed, that no change in circumstances has occurred may be a sound basis for altering the court's order. The previous solution may not have worked." Id. Thus, a review and redetermination trial necessarily contemplates an examination of prior circumstances.

5

The judge properly considered the mother's protracted struggles with a "substance use disorder, mental health concerns, homelessness, and domestic violence that have gone unaddressed."  In support of her findings, the judge cited four department investigator reports and a guardian ad litem report filed between April 29, 2022, and June 7, 2023.  Given the context of the department's contact with the mother, we do not view this information as being stale by the time of trial on June 8, 2023.  For example, on March 3, 2022, a social worker met with the mother in her residence.  She admitted that she had not engaged in drug treatment since 2014, had relapsed since that time, and had entered a psychiatric unit following a suicide attempt.  In a subsequent visit at the residence, the mother admitted having difficulty concentrating and considered going to the hospital for adjustments to her medication.  On August 1, 2022, another social worker contacted the mother and arranged a home visit.  The mother did not open the door or answer calls at the appointed time and thereafter failed to answer phone calls.  The social worker concluded that this lack of contact left her unable to "confirm any treatment or services."  Such long-standing, unaddressed mental health and substance abuse issues coupled with the mother's lack of cooperation with the department could properly be considered "to predict future ability and performance."  Adoption of Jacob, 99

6

Mass. App. Ct. 258, 262 (2021) quoting Adoption of Katharine, 42 Mass. App. Ct. 25, 32-33 (1997).

In particular, the pattern of the mother's disengagement with the children began long before the trial and continued through trial and beyond. The record showed that the mother ceased visiting the children at least four years prior to trial. She had no contact with the department for ten months leading up to trial. She failed to maintain contact with counsel for nine months and did not attend any of the trial. Even after the trial, the judge gave the mother another opportunity to present evidence on her own behalf, but the mother again failed to appear. Far from being stale, this evidence constituted a consistent and continuous theme of utter disengagement over a long period of time. "[I]t would defy logic here not to consider" such evidence. Adoption of Luc, 484 Mass. 139, 145 n.15 (2020).

2. Statutory factors. Next, the mother contends that the judge erred by failing to articulate which statutory factors weighed in her decision before terminating the mother's parental rights. Although it may be common practice in cases involving unfitness determinations for trial judges to address, seriatim, each factor set out in G. L. c. 210, § 3, "such specificity is not required." Adoption of Nancy, 443 Mass. 512, 516 (2005). The substantial deference we afford to the judge's decision

includes a recognition that precision is neither desirable nor possible in this field and "much must be left to the trial judge's experience and judgment."  Adoption of Hugo, 428 Mass. 219, 225 (1998), cert. denied sub nom. Hugo P. v. George P., 526 U.S. 1034 (1999), quoting Adoption of a Minor (No. 2), 367 Mass. 684, 688 (1975).

Apart from the judge noting that she considered the statutory factors, see Adoption of Larry, 434 Mass. 456, 470 (2001), we are satisfied that the judge's detailed and specific findings demonstrated close attention to the evidence as well as the fourteen nonexclusive factors identified in the statute. For example, the judge repeatedly referenced the mother's longstanding and unaddressed issues surrounding substance abuse and mental health.  See G. L. c. 210, § 3 (c) (xii) (prolonged "alcohol or drug addiction, mental deficiency or mental illness").  The judge also referenced the mother's disengagement from both the department and the children.  See G. L. c. 210, § 3 (c) (viii) ("lack of effort"); G. L. c. 210, § 3 (c) (x) ("willful failure to visit").  We also note that the mother admitted knowing the department's action plan, which included therapy, substance abuse support, and parenting classes, but she disengaged from the department's efforts to provide services. See G. L. c. 210, § 3 (c) (ii) (inability or unwillingness to utilize department services).  Overall, the judge's findings

8

that the mother left the children, ceased to communicate with the department, failed to appear at multiple hearings, and made no attempt to get the children back all bore directly on the mother's ability, capacity, fitness, and readiness to assume parental responsibility.  G. L. c. 210, § 3 (c) (best interests of child).

3.  Permanency plans.  The mother also contends that the judge erred by failing to adequately evaluate the permanency plans for the children before terminating her parental rights. In determining the best interests of the child at a termination of parental rights trial, "the judge must consider, among other things, 'the plan proposed by the department.'"  Adoption of Varik, 95 Mass. App. Ct. 762, 770 (2019), quoting G. L. c. 210, § 3 (c).  The law does not require that the plan be "fully developed" in order to support a termination order, but it must provide "sufficient information about the prospective . . . placement 'so that the judge may properly evaluate the suitability of the department's proposal.'"  Adoption of Jacob, 99 Mass. App. Ct. at 273, quoting Adoption of Willow, 433 Mass. 636, 652-653 (2001).

Here, the record shows that the placement plan, even if not fully developed, is in the children's best interests.  The plan called for the children to remain under the coguardianships, with some anticipated modifications to address the needs of each

9

child (Gianna expressing a desire to end the coguardianship with one of the guardians and Amy being evaluated for significant learning and neurological issues). The children have been living with the coguardians since August 2019 and are "happy and well cared for." In addition, the judge found that the coguardians were able to appropriately care for Amy's "significant emotional, neurological, and educational challenges," and the "[m]other is not in a position to meet this child's high level of needs." The judge also properly weighed the children's wishes. Gianna wanted to live with one of the coguardians and end all contact with the mother, and Amy sought permanency with the coguardians and did not want to live with the mother. "[F]or a child to express a desire not to be with a parent, is the most powerful statement a child can make about fears and level of trust in h[er] parents" (quotation omitted). Adoption of Quentin, 424 Mass. 882, 888 (1997). See Adoption of Nancy, 443 Mass. at 518 (children's wishes "are entitled to weight in custody proceedings," but their views are not "decisive, . . . nor outcome determinative" [citations omitted]).

4. Reasonable efforts. Finally, the mother argues that the department failed to make reasonable efforts to restore the children to her care. If a parent believes the department has provided inadequate services, "many avenues" are available to

10

address the concern prior to trial.  Adoption of West, 97 Mass. App. Ct. 238, 242 (2020).  A parent may not raise the claim for the first time on appeal.  See Adoption of Gregory, 434 Mass. 117, 124 (2001).  Therefore, this claim is waived.

Decrees affirmed.

By the Court (Vuono,
Englander & Hodgens, JJ.[2]),

Clerk

Entered:  November 21, 2024.

---

[2] The panelists are listed in order of seniority.

11