NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-964

ADOPTION OF COLE.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The father appeals from a decree of the Juvenile Court finding him unfit to parent Cole, terminating the father's parental rights, and declining to order posttermination and postadoption visitation.[2]  We affirm.

Background.  When the mother was pregnant with Cole, she was not forthcoming to the Department of Children and Families (department) about who the father was and named someone else.[3] The father, who was not present at Cole's birth in 2019, did not sign the birth certificate.  Although the father was not certain

_____

[1] A pseudonym.

[2] The mother's parental rights also were terminated.  She appealed and then withdrew her appeal.

[3] The department was already involved with the mother due to concerns over unexplained injuries to one of the mother's older children.

that he was Cole's father, he and the mother coparented Cole following his birth until the department removed him from his mother's care in December 2019 when the child was nine months old.[4]

Cole was removed from the mother's care after the mother and the father were arrested for possession with intent to distribute illegal substances (class A, class B, and class D substances).  Earlier that year, in February 2019, the father was charged with negligent operation of a motor vehicle, possession with intent to distribute crack cocaine, and possession with intent to distribute heroin.  In February 2020, the father was charged with two counts of assault by means of a dangerous weapon.

In April 2020, the mother revealed to the department that the father was Cole's father.  In November 2020, a judge of the Juvenile Court approved the department's permanency plan for Cole and ordered that the father be added to the petition as Cole's putative father.

---

[4] Cole was initially removed from the mother's care due to being a substance exposed newborn, but later returned to the mother after she was granted contingent custody.  He was temporarily removed from the mother's care again in September 2019, until the mother was given contingent custody a second time.

In February 2021, in two separate trials, the father was found guilty of the February 2019 and February 2020 charges. He was sentenced to four years in prison. During his incarceration, the father was involved in a fight and placed in segregation. As a result, the father's access to and engagement with department services was limited. Additionally, because the father continued to delay establishing his paternity, despite repeated promptings by the department, he was never offered visitation with Cole.

In October 2021, a two-day termination of parental rights trial was held.[5] The father, still incarcerated, appeared for both days and testified. At the end of trial, a judgment of paternity was issued naming the father as Cole's legal father. In January 2023, the judge issued an order terminating the mother's and the father's parental rights. The order granted the mother, but not the father, certain posttermination and postadoption visitation rights.

Discussion. "To terminate parental rights to a child and to dispense with parental consent to adoption, a judge must find by clear and convincing evidence, based on subsidiary findings proved by at least a fair preponderance of evidence, that the

_____

[5] A few days prior to trial, the father and the mother filed with the court a signed voluntary acknowledgement of parentage.

3

parent is unfit to care for the child and that termination is in the child's best interests." Adoption of Jacques, 82 Mass. App. Ct. 601, 606 (2012). "Unless shown to be clearly erroneous, we do not disturb the judge's findings, which are entitled to substantial deference." Id. at 606-607.

The father argues that the judge's termination of his parental rights was clearly erroneous because the judge erred in (1) finding that his unfitness was likely to continue into the indefinite future, and (2) approving the department's adoption plan where the child did not support termination at the time of trial.[6] We disagree.

1. Unfitness. "Because termination of a parent's rights is an 'extreme step,' . . . a judge must decide both whether the parent is currently unfit and whether, 'on the basis of credible evidence, there is a reasonable likelihood that the parent's unfitness at the time of trial may be only temporary'" (citations omitted). Adoption of Ilona, 459 Mass. 53, 59 (2011). "Parental unfitness must be determined by taking into consideration a parent's character, temperament, conduct, and capacity to provide for the child in the same context with the child's particular needs, affections, and age." Adoption of

_____

[6] We note that on appeal, Cole supports the termination of parental rights and his placement with his preadoptive parent.

4

Mary, 414 Mass. 705, 711 (1993).  The father concedes that he was unfit at the time of trial.  He argues instead that the judge erred in finding that his unfitness was not temporary.

In determining future fitness, "[a] judge may properly be guided by evidence demonstrating reason to believe that a parent will correct a condition or weakness that currently disables the parent from serving his or her child's best interests," Adoption of Carlos, 413 Mass. 339, 350 (1992), but a judge may not base future fitness on a "faint hope" that the parent may later become fit.  Adoption of Inez, 428 Mass. 717, 723 (1999).

Here, the record supports the judge's conclusion that the father's unfitness was not temporary.  First, the judge properly considered the father's physical unavailability to parent Cole due to his ongoing incarceration.  See Adoption of Serge, 52 Mass. App. Ct. 1, 8 (2001) ("Physical unavailability of the parent to provide day to day care for the child, including for reasons of incarceration, was relevant evidence of unfitness").  Moreover, the father's convictions and open charges reflected a pattern of violent behavior incompatible with Cole's need for safety and stability.  See Care & Protection of Quinn, 54 Mass. App. Ct. 117, 126 (2002) (father's record of criminal convictions involving violent or irresponsible behavior relevant to finding of unfitness).

5

The father limited his ability to participate in department services while incarcerated when he was involved in a fight after which he was placed in segregation. Although the father began engaging in a substance abuse program at the end of July 2021, the judge was not required to believe that the father's behavior had improved. See Care & Protection of Quinn, 54 Mass. App. Ct. at 126-127. Finally, the father's willful failure to establish paternity until the end of trial, nearly two years after Cole's removal, resulted in his inability to obtain visitation with his child, and supported the finding of unfitness. See G. L. c. 210, § 3 (c) (x).

2. Approval of the adoption plan. "In choosing among placement plans, it falls to the sound discretion of the trial judge to determine what is in the best interests of the child, and our review on appeal is one of 'substantial deference'" (citation omitted). Adoption of Bianca, 91 Mass. App. Ct. 428, 434 (2017). Although "[a] judge should consider the wishes of the children in making custodial determinations, and those wishes are entitled to weight in custody proceedings[,]" they are "neither decisive . . . nor outcome determinative" (quotation and citation omitted). Adoption of Nancy, 443 Mass. 512, 518 (2005).

6

Here, the record supports the judge's determination that the department's adoption plan was in the best interests of Cole.  His preadoptive parent can meet Cole's needs and is committed to adopting both Cole and a sister to whom he is very close.  Cole has expressed love and affection toward his preadoptive parent and goes to her for all his needs.  There is no apparent bond between Cole and the father, as the father never visited with Cole since his removal in December 2019.[7]  It was not error or abuse of discretion for the judge to conclude that Cole's interest in long-term stability is better served in his current placement, where he appears to be settled and comfortable, than indefinitely waiting for the father to finish

---

[7] Because there is no bond between the father and Cole, to the extent the father argues that the judge erred in not ordering postadoption or posttermination visitation, we disagree.  See Adoption of Terrence, 57 Mass. App. Ct. 832, 839 (2003) (judge's decision whether to order postadoption or posttermination visitation "must be grounded in the over-all best interests of the child, based on emotional bonding and other circumstances of the actual personal relationship of the child and the biological parent" [quotation and citation omitted]).

his incarceration and become fit to parent.  See <u>Adoption of</u> <u>Bianca</u>, 91 Mass. App. Ct. at 434.

<u>Decree affirmed</u>.

By the Court (Henry, Shin & Brennan, JJ.[8]),

Clerk

Entered:  July 1, 2025.

---

[8] The panelists are listed in order of seniority.