NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

25-P-486

ADOPTION OF WYCK.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The father appeals from a 2024 decree issued by a judge of the Juvenile Court terminating the father's parental rights as to Wyck.[2]  We affirm the decree.

Background.  Wyck was removed from his mother's care when he was approximately nine months old and was one week away from turning four years old by the time the decree issued.  The father was incarcerated for the entirety of Wyck's life through trial, having pleaded guilty to assault and battery on the mother while she was pregnant with Wyck.  As a result, Wyck has

_____

[1] A pseudonym.

[2] The mother was found unfit for reasons unrelated to the father, and her rights were also terminated.  The mother did not file a notice of appeal, and she unfortunately died in February 2025.

never been in the father's care and has interacted with the father only during supervised visits.

The judge found the father unfit and terminated his parental rights to Wyck based primarily on the father's history of violent behavior, particularly his "ongoing and persistent pattern" of intimate partner violence and his "inability to refrain from criminal activity in time not incarcerated,"[3] creating "a significant physical and emotional danger to [Wyck]."  The judge also considered that Wyck was not meaningfully bonded to the father but was "extremely bonded" with his preadoptive foster mother, and that the father had not engaged fully with the services required to address the concerns about his ability to parent Wyck.

Discussion.  On appeal, the father does not contest his unfitness at the time of trial; rather, he argues that his unfitness was merely temporary.  In particular, he argues that, because his incarceration prevented him from accessing many of the services set forth in his action plan, the Department of Children and Families (department) did not make reasonable

_____

[3] The father has been charged with thirty-nine violent crimes and numerous nonviolent offenses.  He was also the defendant in nine different c. 209A abuse prevention orders obtained by four different women (including both mothers of the father's older children) and has been charged with eleven violations of such orders.  He was convicted and sentenced to from five to seven years in State prison for armed robbery and a stabbing.

efforts at reunification, and the judge did not properly account for the father's limited access to such services in finding his unfitness likely to continue indefinitely.  Given these special circumstances, the father argues, the termination of his parental rights amounted to an abuse of discretion.

We review "to determine whether the judge's findings were clearly erroneous and whether they proved parental unfitness by clear and convincing evidence."  Custody of Eleanor, 414 Mass. 795, 802 (1993).  "[S]ubsidiary evidentiary findings need only be proved by a fair preponderance of the evidence."  Care & Protection of Laura, 414 Mass. 788, 793 (1993).  "We give substantial deference to a judge's decision that termination of a parent's rights is in the best interest of the child, and reverse only where the findings of fact are clearly erroneous or where there is a clear error of law or abuse of discretion."  Adoption of Ilona, 459 Mass. 53, 59 (2011).

1.  Reasonable efforts.  The father argues that the department failed to make reasonable efforts at reunification because it did not account for what services father actually had access to while incarcerated, resulting in the father's action plan including tasks that he was unable to complete.  He argues that the judge's erroneous finding that the department made reasonable efforts warrants vacating the termination decree.  We are unconvinced.

3

First, the father's reasonable efforts argument is waived as it was not sufficiently raised to the department or the Juvenile Court judge.  See Adoption of Mattis, 106 Mass. App. Ct. 548, 549-550 (2026) (reasonable efforts claims subject to ordinary waiver rules).  The father did not at any time argue that the department should have done more to provide him with services while in prison, nor did he seek to delay the termination proceedings until he was able to avail himself of services that he was not able to access through the correctional facility.  Although the department was arguably on notice that its action plan was not tasking father with "accessible, available, and culturally appropriate services"[4] (citation omitted), Care & Protection of Rashida, 488 Mass. 217, 219 (2021), the father did not at any time suggest what additional or different efforts the department could and should have made but did not.[5]

---

[4] The department's reports repeatedly state, "Due to [the father's] incarceration, [his] participation in his action plan is limited," indicating its awareness that at least some services were not available to the father.

[5] The father argues, correctly, that 110 Code Mass. Regs. § 1.10 (2008) "recognizes the special efforts required" when a parent is incarcerated.  While the listed requirements that the department provide regular visitation and hold case conferences at the correctional facility may not be exhaustive, the requirement of "special efforts" is still limited to those that are "reasonable."  See id.  Where the father has not argued that the department should have made particular additional or

4

Nor did the father make any effort to raise the issue to a judge, such as by filing an "abuse of discretion" motion, raising the issue at a case conference, or arguing the issue at trial.[6]  See Adoption of West, 97 Mass. App. Ct. 238, 242-243 (2020).  To the contrary, in August 2023 -- over a year before the review and redetermination trial -- a judge determined that the department had made reasonable efforts at reunification, and the father waived appeal.  The father's reasonable efforts argument is, therefore, waived.

Second, even if the father's argument had been preserved and assuming arguendo that the department did fail to make reasonable efforts, such circumstances would "not preclude the court from making any appropriate order conducive to the child's best interest," including an order terminating the father's parental rights.  Adoption of Ilona, 459 Mass. at 61, quoting G. L. c. 119, § 29C.  Because we conclude, infra, that the judge

_____

alternative efforts, we have no basis to conclude that the regulation was not satisfied.

[6] To the extent that the father raised any reasonable efforts argument at trial, it concerned the department's failure to make reasonable efforts at a kinship placement.  The father does not press this argument on appeal; the ones he does press were not raised below and so are waived.  See Carrel v. National Cord & Braid Corp., 447 Mass. 431, 442 (2006) (issue not preserved where party's objection below was on grounds other than those argued on appeal); Adoption of Gillian, 63 Mass. App. Ct. 398, 408 (2005) (parents' failure to raise visitation issue before termination of rights resulted in waiver).

5

did not err or abuse her discretion in finding the father unfit and concluding that termination was in Wyck's best interests, the father's reasonable efforts argument does not entitle him to relief.

2. <u>Unfitness</u>. The father argues that it was premature for the judge to find his unfitness likely to continue into the indefinite future, because the gains he made while incarcerated had not yet been tested in the community. Because the father does not challenge any of the judge's factual findings as clearly erroneous, we address only whether "the judge's findings prove parental unfitness by clear and convincing evidence." <u>Custody of Eleanor</u>, 414 Mass. at 801. We conclude that she did not.

Here, the judge found the father's future unfitness likely based on his history of violent behavior, coupled with his present lack of insight into how that behavior affects his ability to parent Wyck. Specifically, the judge found that the father "has exhibited an inability to refrain from criminal activity [when] not incarcerated" and that his "history of violent and non-violent criminal behavior suggests a level of instability and a lack of safety that do not serve [Wyck's] needs." Moreover, the judge found that the father continued to lack accountability and insight into how his history of violent behavior could affect Wyck. In so finding, the judge considered

6

the father's refusal to acknowledge that his own violence caused the multiple previous abuse prevention orders against him and his incarceration at the time of trial; he also stated to a foster care review panel that his past "has nothing to do with his son."

Although the judge recognized the father's voluntary participation in services provided by the correctional facility,[7] recent improvements are not dispositive, particularly where not accompanied by increased insight into the impact of past shortcomings on a child, as here.  See Adoption of Paula, 420 Mass. 716, 729-730 (1995).  Furthermore, "the judge is not required to grant the father an indefinite opportunity for reform" (citation omitted), Adoption of Cadence, 81 Mass. App. Ct. 162, 169 (2012), nor may a judge postpone dispensing with consent based on a "faint hope" that a parent may later become fit.  Adoption of Inez, 428 Mass. 717, 723 (1999).  The father here has not suggested how long after his release from incarceration he would need to become a fit parent, and Wyck has

---

[7] Notably, however, the judge also found that the father "vehemently refused to engage in substance abuse related treatment," despite significant concerns about his history of cocaine use, the inclusion of such treatment as an action plan task, and its availability to the father while incarcerated. Although the father argues that there was no support in the record for a finding that he had a substance abuse problem that he needed to address, we are not persuaded.  For example, the judge credited a social worker's testimony that the father showed signs of intoxication during a 2024 virtual home visit.

already spent more than three of the four years of his life in foster care. See Adoption of Nancy, 443 Mass. 512, 517 (2005) ("Stability in the lives of children is important"). Thus, the judge did not abuse her discretion by finding the father's unfitness likely to persist indefinitely.

"Once a parent is found to be unfit, the judge must then ascertain whether the parent's unfitness is such that it would be in the child's best interests to end all legal relations between parent and child" (quotations and citation omitted). Adoption of Imelda, 72 Mass. App. Ct. 354, 360 (2008). "In determining whether the best interests of the child will be served" by dispensing with the father's need for consent, the judge must "consider the ability, capacity, fitness, and readiness" of the father to assume parental responsibility as well as the plan proposed by the department. G. L. c. 210, § 3 (c). Here, the judge properly applied the required factors set forth in G. L. c. 210, § 3 (c) -- including factors (ii)-(iv), (vii), (viii), and (xii)[8] -- as well as the department's permanency plan for Wyck. Considering the longstanding and

_____

[8] The judge applied additional factors to Wyck's situation as well, without distinguishing whether these applied as a result of the mother or father independently. The factors we have cited above were sufficient to conclude that the best interests of Wyck would be served by terminating the father's rights, even if additional factors might also apply.

8

likely permanent nature of the father's unfitness, what the judge determined was a significant likelihood of harm to Wyck if he were placed in the father's care, and Wyck's lack of meaningful bond with his father and contrasting strong bond with his preadoptive foster mother, it was not an abuse of discretion for the judge to find that terminating the father's rights served Wyck's best interests.

Decree affirmed.

By the Court (Rubin, Sacks & Smyth, JJ.[9]),

*Paul Little*

Clerk

Entered:  April 22, 2026.

---

[9] The panelists are listed in order of seniority.